MILWAUKEE MASONS & BUILDERS' ASSOCIATION, Appellant, vs. NIEZEROWSKI, Respondent.

*December 19, 1896 — February 2, 1897.*

*Combination in restraint of business: Monopolies: Contract against public policy: Consideration of note: Entry of judgment: Costs.*

1. A combination by an association of masons and building contractors, embracing more than four fifths of those classes in a city, to suppress fair and free competition in bidding for contracts, evidenced by private by-laws requiring every member to submit all bids proposed to be made by him to such association, and if found to be the lowest bidder and entitled to the contract, to add to such bid, before submitting it to the owner or architect of the proposed building, six per cent. of the contract price, which he is to pay to the association, and give it his note therefor, and in that manner to exact from owners six per cent. in excess of a fair price, is contrary to public policy, unlawful, and void.

2. A note given to such association by a member thereof for the percentage required by such a by-law to be paid on a contract taken is founded upon an unlawful consideration, and is therefore void and will not be enforced.

3. It is the evident intent of our statute (S. & B. Ann. Stats. sec. 2894a) that the attorney for the party in whose favor a verdict is rendered shall prepare and deliver to the clerk the proper judgment to be entered thereon, and the clerk is required to tax the costs on the application of such party and insert them in the judgment, upon three days' notice to the other party. If the prevailing party fails thus to perfect his judgment within sixty days after the verdict, or, in case of a stay, within thirty days after the stay expires, he loses his right to costs, and the clerk must enter the proper judgment without costs. The mere pendency of a motion for a new trial does not operate as a stay of proceedings.

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Affirmed, except as to costs.*

This action was brought to recover the sum of $2,289 claimed as a balance due upon a promissory note for $4,266, given by the defendant to the plaintiff corporation by the

name and style of the *Masons & Builders' Association*, payable one year and three months after date. The defense was that the note was without legal consideration, and void; that the pretended consideration was contrary to public policy and good morals, and that the note was given by and secured from the defendant, who was a member of the said association, pursuant to a secret combination and confederation of the plaintiff and its members to exact of and from citizens of Milwaukee, Wisconsin, desiring to erect and construct buildings, a sum equal to six per cent. in excess of the actual cost and value of the work to be done, and by secret means to prevent and suppress competition in bidding for such work; that the note in question was given and received for the purpose and as a means of carrying into effect such alleged unlawful combination. There was practically no dispute as to the facts, and at the close of the evidence the court directed a verdict for the defendant. From a judgment thereon against the plaintiff for costs, plaintiff appealed.

At the time the note was given, the membership of the corporation plaintiff comprised about sixty of the seventy or seventy-five mason contractors in Milwaukee. The masons and builders thinking that they were not receiving fair treatment in the matter of bids for and letting work from owners and their architects, the association devised and adopted certain rules and by-laws in relation to bids and contracts, as a protection against the practices of which they complained. The association had two sets of by-laws, one of which was for general distribution, and the other, under which they carried on their operations, was private. They had contracts with material men in the city by which members who complied with the private by-laws could and did, notably in purchases of brick of the Brickmakers' Association, receive rebates of thirty-three and one-third per cent. upon all material necessary for their contracts, and they

were thus enabled to underbid nonmembers for doing such work.

By reason of the city ordinances, all buildings within fire limits were required to be constructed of brick, stone, or other fireproof material, and by the plaintiff's private by-laws, if brick was purchased in Chicago, or outside of Milwaukee, where it could be procured much cheaper than of the Brickmakers' Association, the members of the plaintiff association were required to charge $2 more per thousand for laying them, $1.25 of which went to the Brickmakers' Association of Milwaukee, and seventy-five cents to the plaintiff association; which it was contended enabled the Brickmakers' Association to maintain general high prices, and to make such discount to members of the plaintiff association. By the private by-laws of the plaintiff it was required of all its members who wished to compete for any contract or job, public or private, to bring their bids to the rooms of the association the day preceding the one on which bids were to be submitted to the person desiring to build, or his architect or agent, when a committee of such bidders was appointed by a chairman, one of their number, who was to inspect the bids and determine who was the lowest bidder. Such lowest bidder was then *required to add six per cent.* to the amount of his bid, before he could submit it to the person for whose work he was competing, or to his architect or agent. In case his bid was eight per cent. or more lower than the next lowest bid, the bidders present were to determine how much should be added, over said six per cent., to his bid. All bids made by members were to be made at the rooms of the association, and at no other place; and after bids had been submitted to the owner or architect no member was allowed to change his bid, or do the work except at the figures given in such bid. Members who did not comply with the rules in submitting their bids to the association were "under no circumstances to submit a bid for the work."

Another private rule was that "no member shall give a bid to any owner or architect for changes or additions to work under contract. The original contractor shall have the right to bid on such changes or additions *without competition*, unless the amount is larger than the contract; but other bidders shall go in *for the accommodation* of the owner, *after arranging the same* with the original contractor, who will pay only six per cent. of such work; the other bidders *having no voice* in making such bid." The successful bidder, upon signing a contract, was required to report to the association certain particulars thereof, and file the contract with the secretary within three days thereafter. Another of said rules required him to pay six per cent. of each estimate to the secretary; and when the roof was on the building he was to pay his percentage in full, whether he had received payment in full or not. Members were subject to certain fines for noncompliance with by-laws.

In the summer of 1892, and while a member of the association plaintiff, the defendant became the successful bidder for building the Gesu Church in Milwaukee, for the sum of $71,000, but he submitted his bid for doing the work directly to the congregation, and did not submit it to the association plaintiff, and there was no addition of six per cent. made to his bid for its benefit. The association claimed that the defendant should give his note for the usual percentage of six per cent., and, after he had been visited by a committee, he was notified to attend a special meeting to consider the subject, when, after some discussion, he finally gave the note in question for the required amount, it being understood that he would remain a member.

He testified, in substance, that he had other contracts, and he apprehended that if he did not give the note the association might cut him off, and he would have trouble in relation to his work; that he understood, if he did give it, he would have the benefit of the association in rebates. He also tes-

tified that he had rebates on material for the church work, but that he got them by reason of prompt payment, and not through the association. The ordinary method of getting rebates was by obtaining a slip for that purpose from the secretary, but the evidence showed also that they were frequently arranged between the material men and members. The evidence showed that the only consideration for the note was the benefits and advantages received by the defendant, or expected to be, such as were provided and secured by said by-laws and the methods of transacting business under them.

For the appellant there were briefs by *A. J. Eimermann* and *Hoyt, Ogden & Olwell*, and oral argument by *F. M. Hoyt*. They argued, *inter alia*, that to make the plaintiff association an unlawful combination there must be proof that it was organized for the purpose of exacting a higher and greater sum out of the building public, and also that such combination was complete, so that the public was at the mercy of the members thereof. *Kellogg v. Larkin*, 3 Pin. 123, 131; *Laubenheimer v. Mann*, 17 Wis. 542; *National Ben. Co. v. Union Hospital Co.* 11 L. R. A. 437; *Richardson v. Buhl*, 6 id. 457. It must also appear that the public has suffered by reason of the combination. *Leslie v. Lorillard*, 1 L. R. A. 456; *Diamond Match Co. v. Roeber*, 106 N. Y. 473; *Horner v. Graves*, 7 Bing. 735; *People v. North River S. R. Co.* 2 L. R. A. 39. The defendant could not attack the note, even if the contract was unlawful. *National Distilling Co. v. Cream City Imp. Co.* 86 Wis. 352.

For the respondent there was a brief by *Austin & Fehr*, and oral argument by *W. H. Austin*.

PINNEY, J. 1. The question to be determined is whether the benefits and advantages which the defendant was entitled to receive, as a member of the association, in consequence

of conducting its business under and in pursuance of the by-laws already noticed, constitute a lawful consideration for the note. The manifest purpose of the private by-laws was, by means of the combination thus effected, to suppress fair and free competition in bidding for building contracts in Milwaukee, and by such combination and method of bidding, upon its face apparently fair and free from objection, but in fact unfair and delusive, to compel owners to pay for the erection of buildings the sum of six per cent. in excess of what they would be otherwise obliged to pay for them if fairly let to the lowest bidder, uninfluenced by such combination. It seems to us that the restraint put upon the rights of proprietors by the provisions of these by-laws or rules, as well as the entire scheme thus disclosed, is contrary to public policy, and therefore void. Agreements in restraint of trade are against public policy and void, unless founded upon a valuable consideration, and limited as regards time, space, and the extent of the trade, to what is reasonable under the circumstances of the case. All such arrangements tend to deprive the public of the services of parties in the employments and capacities in which they are most useful, and they tend to expose the public to the evils of monopoly. *Richards v. American D. & S. Co.* 87 Wis. 512, and cases cited. In *Leather Cloth Co. v. Lorsont*, L. R. 9 Eq. 345, it was said: "All restraints upon trade are bad, as being in violation of public policy, unless they are actually, and not unreasonably, for the protection of parties dealing legally with some subject matter of contract." The test whether the restraint is reasonable is laid down in *Horner v. Graves*, 7 Bing. 735, 743, where it is said: "The question is whether the restraint is such only as to afford a *fair protection* to the interests of the party in favor of whom it is given, and *not so large as to interfere with the interests of the public.* Whatever restraint is larger than the necessary protection of the

party can be of no benefit to either. It can only be oppressive; and, if oppressive, it is, in the eye of the law, unreasonable."

The combination in question is contrary to public policy, and strikes at the interests of those of the public desiring to build, and between whom and the association or the members thereof, there exist no contract relations; and it is not distinguishable in principle from the case of *Hilton v. Eckersley*, 6 El. & Bl. 47, 64, 65. While all reasonable stipulations and means to protect labor or trade are laudable, we must hold that the means here sought to be employed are such as the law will not sanction. We must consider what may be done under such an agreement, and the result which it will necessarily produce. As already pointed out, the operation of this combination, under its private by-laws, is to suppress free and fair competition in bidding for contracts, and by delusive and deceptive means members of the association are enabled to exact from owners a higher price for buildings than they would otherwise have to pay. In the matter of changes or additional work, *all* competition by other members of the association is prohibited, unless the amount exceeds the original contract price. And as the membership of the association embraces nearly six sevenths of the mason builders in Milwaukee, the combination not only tends to suppress competition, but operates most unjustly towards builders not members of the association. The restraint thus imposed on the trade is neither fair nor reasonable.

In *People v. North River S. R. Co.* 2 L. R. A. 33, 40, it was said that "all the cases, ancient and modern, agree that a combination, the tendency of which is to prevent general competition, and to control prices, is detrimental to the public, and consequently unlawful;" and many cases are there cited, and in the note, to the same effect.

In *Hooker v. Vandewater*, 4 Denio, 349, it was held that

an agreement between the proprietors of five lines of boats-
engaged in the business of forwarders on the Erie and Os-
wego canals, to run for the remainder of the season at cer-
tain rates for freight and passage then agreed on, and to·
divide the net earnings among themselves in certain propor-
tions, was a conspiracy to commit an act injurious to trade,
and consequently void. The ·object expressed in the agree-
ment was the "establishing and maintaining fair and uni-
form rates of freight, and equalizing the business among
themselves, and to avoid all unnecessary expense in doing·
the same." Of this, JEWETT, J., observed: "The object of
the agreement, as expressed in the written contract, was
plausible enough, but it was impossible to conceal the real
intention." He added that "the great, if not the sole, ob·
ject of the agreement was to destroy rivalry, and keep up
the prices to certain rates fixed by themselves." *Stanton v.*
*Allen,* 5 Denio, 434, was a very similar case, where it was
held the agreement was void at common law, as contraven-
ing public policy and injurious to the interests of the state.
*Morris Run C. Co. v. Barclay C. Co.* 68 Pa. St. 186; *Cen-*
*tral Ohio S. Co. v. Guthrie,* 35 Ohio St. 672; *Craft v. Mc-*
*Conoughy,* 79 Ill. 346; *More v. Bennett,* 15 L. R. A. 321, 140·
Ill. 69; *Texas Standard Oil Co. v. Adoue,* 15 L. R. A. 598,
602, 603, 83 Tex. 650; *Anderson v. Jett,* 6 L. R. A. 390, 89·
Ky. 375. These are all cases quite in point, and show that
the restraint on trade produced by this combination is un-
reasonable, and without legal sanction.

The true test of the illegality of a combination to restrain·
business or trade is its effect upon the public interests; that
is to say, of those outside of the combination. *Nester v.*
*Continental B. Co.* 161 Pa. St. 473. In *Atcheson v. Mallon,*
43 N. Y. 147, 149, it was said that "The·true inquiry is, Is
it the natural tendency of such an agreement to injuriously
influence the public interests? The rule is that agreements·
which, in their necessary operation upon the action of the·

parties to them, tend to restrain their natural rivalry and competition, 'and thus to result in the disadvantage of the public, or of third parties, are against the principles of sound public policy, and are void." If, from the plaintiff's own showing or otherwise, a cause of action appears to arise *ex turpi causa*, the court will not allow a recovery. The maxim is *Ex dolo malo actio non oritur*. The defendant may properly invoke the maxim that in such cases *potior est conditio defendentis*. The court refuses to interfere in such cases, not on account of the defendant, but in the larger interests of the public. *Nester v. Continental B. Co. supra; Hooker v. Vandewater*, 4 Denio, 352. In *Wight v. Rindskopf*, 43 Wis. 348, it was said by RYAN, C. J., that "Courts owe it to the public justice, and to their own integrity, to refuse to become parties to contracts essentially violating morality or public policy, by entertaining actions upon them. It is judicial duty always to turn a suitor upon such a contract out of court, whenever and however the contract is made to appear." No court will enforce such an agreement as the one before us, or compel the defendant to go any further in performing on his part by enforcing payment of the note. The verdict for the defendant was rightly directed.

2. The verdict was entered November 25, 1895, and on November 30 a motion to set it aside and for a new trial was made, and denied by an order dated the same day the verdict was entered, but filed November 30. On the 9th of December the defendant procured his costs to be taxed at $50.73. No order or direction had been made by the court staying proceedings, or reserving the case for further consideration. On the 31st of January, 1896, the judgment was filed and entered, signed by the clerk of the court, and the costs, as theretofore taxed, are entered therein. The plaintiff afterwards moved to strike the entry of costs out of the judgment, for the reason that the defendant had

failed and neglected to perfect his judgment within sixty days from the entry of the verdict, as provided by S. & B. Ann. Stats. sec. 2894a, which makes it the duty of the successful party "to enter and perfect the judgment upon the finding or verdict within sixty days after the filing of the finding, or the rendition of the verdict;" and that, "in case the successful party shall neglect to perfect the judgment within the time aforesaid, it shall be the duty of the clerk of the court to prepare and enter the judgment, but without costs to either party; and the neglect or failure of the successful party to enter and perfect judgment, as hereinbefore required, shall be deemed a waiver of his right to the accrued costs in the action," provided that whenever there shall be a stay of proceedings after finding or verdict, judgment may be perfected, as therein provided, "at any time after thirty days from the expiration of such stay of proceedings." The giving notice or entry of the motion for a new trial did not operate to stay the entry of judgment, or as a stay of proceedings.

The statute provides that upon receiving and entering a verdict, "if a different direction be not given by the court, the clerk must enter judgment in conformity with the verdict." R. S. sec. 2861; *Davison v. Brown*, 93 Wis. 85; *Wheeler v. Russell*, 93 Wis. 135. The clerk *must* enter judgment, but as provided by sec. 2927. "The judgment shall be entered in the judgment book." Sec. 2897. By sec. 2927, S. & B. Ann. Stats., "the clerk shall tax and insert in the entry of judgment, and in the docket thereof, if the same shall have been docketed, *on the application* of the prevailing party, upon *three days' notice* to the other, the sum of the costs and disbursements as above provided." If the successful party "shall neglect to *perfect* the judgment" within sixty days, as specified, then "it shall be the duty of the clerk of the court to *prepare and enter* the proper judgment, but without costs to either party." S. & B. Ann. Stats.

Milwaukee Masons & Builders' Association vs. Niezerowski.

sec. 2894a. No judgment appears to have been prepared by the successful party within the prescribed sixty days, although the costs were taxed within that time. It is the evident intention of the statute that the attorney of the party in whose favor a verdict is rendered shall prepare and deliver to the clerk the proper judgment to be entered thereon, and the clerk is required to tax the costs on the application of such party, and insert in the entry of judgment the sum of the costs and disbursements, upon three days' notice to the other party. When this has been done, the prevailing party has *perfected* his judgment, within the meaning of sec. 2894a. The defendant did not *perfect* his judgment within sixty days after the entry of the verdict, and, as no different direction was given by the court, under sec. 2861, at the expiration of that time the defendant lost his right to costs, and it became " the duty of the clerk to *prepare and enter* the proper judgment, but without costs to either party." Sec. 2894a. It is to be noted that by sec. 2861, " upon receiving a verdict, the clerk shall make an entry on his minutes specifying . . . the verdict, and either the judgment rendered thereon, or *an order* that the cause be reserved for argument or further consideration." The case of *Steinhofel v. C., M. & St. P. R. Co.* 92 Wis. 123, was decided in view of a very general practice that had grown up to regard the entry of a motion for a new trial as a stay of proceedings until disposed of, and our attention was not directed to sec. 2861. Correct practice and a proper application of the statute compel a contrary conclusion. *Davison v. Brown* and *Wheeler v. Russell, supra.* For these reasons we must hold that in this case the defendant, by failing to perfect judgment within sixty days after the entry of the verdict, lost his right to costs, and that the judgment, as to costs, must be reversed, and in all other respects affirmed, but without costs; the fees of the clerk of this court to be paid by the defendant.

*By the Court.*— Judgment is ordered accordingly.