LEHNER, Respondent, VS. BERLIN PUBLISHING COMPANY and others, Appellants.

*December 7, 1932—April 11, 1933.*

122

*Norman E. Wood* of Berlin, attorney, and *T. L. Doyle* of Fond du Lac of counsel, for the appellants.

For the respondent there were briefs by *Lehner & Lehner* of Princeton, attorneys, and *John E. O'Brien* of Fond du Lac of counsel, and oral argument by *Mr. O'Brien* and *Mr. Philip Lehner in pro. per.*

The following opinion was filed January 10, 1933:

FOWLER, J. The appellants contend that the trial court should have (1) directed a verdict for defendants because the article was a true and fair report of a judicial proceeding, or (2) should have submitted to the jury whether it was such report; (3) evidence was erroneously received over the objection of defendants; (4) the court erroneously refused to instruct the jury as requested by the defendants; (5) the court erred in submitting the question of defendants' express malice to the jury; (6) the court erred in including exemplary damages in the judgment; (7) the compensatory damages assessed by the jury are excessive.

(1) (2) The article of April 9th is libelous *per se.* It charges Mr. Lehner with inducing Mrs. Kelm to sign certain documents through misrepresentation and fraud and it charges that Mrs. Kelm's attorney in the supreme court stated that "Mr. Lehner took unfair advantage of the ignorance of Mrs. Kelm and thus fraudulently while representing the plaintiff (her husband) secured her signature to documents." It was not a true and correct report of a judicial proceeding because it falsely indicates in its caption that this court upheld the action of Judge DAVISON in setting

aside the Kelm divorce judgment and in its first paragraph falsely states that this court justified his such action. This court merely held that the order setting aside the judgment was not appealable. To amount to an upholding or justification of the action of Judge DAVISON the decision would have had to affirm his order on the merits or on the ground that it was not an abuse of discretion. The decision did not pass on either of these matters. See opinion in *Kelm v. Kelm,* 204 Wis. 301, 235 N. W. 787.

(3) The items of evidence claimed to have been erroneously received are numerous and will be separately considered. The situation is complicated by the trial of the two cases together. Some of the evidence objected to was admissible upon the issues involved in the case based upon the article of March 6th but not in the instant case.

(a) The article of March 6th was reprinted in a newspaper published in Menasha. If receivable in the case based on the March 6th article, as bearing upon the extent of the circulation or publication of that article, it manifestly had no bearing upon the issues of this case and its receipt should have been refused or limited to the other case.

(b) The article of March 6th was received in evidence, without limiting its effect to the case based on that article, in which it was manifestly receivable. The defendants urge that it was inadmissible upon the issues of this case for any purpose, because its publication was absolutely privileged. The plaintiff claims it was admissible in the instant case as bearing upon the question of express malice in publishing the article of April 9th. There is no doubt of the general rule that other publications by the defendant of libels are admissible as tending to show express malice in the publication which is the basis of the action. The question is not as to that rule, but whether a publication absolutely privileged is an exception to it. The precise point seems not to have been

decided except in a New Jersey case, *Evening Journal Asso. v. McDermott,* 44 N. J. L. 430, 431. It was therein squarely held that a previous privileged publication is not evidence of malice and consequently not receivable in evidence. This rule is repeated, citing the *McDermott Case,* in *Fahr v. Hayes,* 50 N. J. L. 275, 13 Atl. 261, 264. It was held in *Shinglemeyer v. Wright,* 124 Mich. 230, 82 N. W. 887, that a letter written by defendant to the superintendent of police of a city in which plaintiff is accused of stealing property of the defendant, and statements of defendant to police officers connected with the city detective department accusing defendant of the theft, were inadmissible to show malice, as they were privileged communications. We find no other cases upon the point. It is stated in 1 Wigmore on Evidence, sec. 404 (2), that "The suggestion that such an (defamatory) utterance when privileged is not thus evidential (on the question of malice) has not been generally accepted and seems unsound." The author cites nothing upon the point but the New Jersey cases above referred to. With his dictum that the suggestion "seems unsound" we differ. It seems to us that a publication absolutely privileged ought not to be received in evidence to show malice. The original publication may or may not have been maliciously made. Being lawfully published, as absolutely privileged, the presumption of general malice which follows from the publication of a false and defamatory article not privileged does not obtain. This presumption rests upon the unlawfulness of the publication. Where the publication is lawful there is nothing for the general presumption to rest upon. The privileged publication would not tend to show express malice unless its publication was itself actuated by express malice. It ought not to be presumed that its publication was actuated by express malice, and attempt to prove or refute express malice in its publication would lumber the case with

collateral issues. We are of opinion that a publication absolutely privileged is not admissible to show malice in the publication of any other libelous article.

(c) The case of *Kelm v. Kelm* referred to above finally came on for trial in the circuit court for Green Lake county before Judge WERNER, and judgment therein went for the plaintiff in September, 1931. The answer in the instant case alleged that the statements respecting Mr. Lehner's conduct made in the publication of April 9th were true. The trial court received in evidence, over the objection of the defendants, the findings of Judge WERNER, a stipulation of the parties filed upon the trial of the suit, and the judgment. It is urged that this admission was erroneous because bearing upon the truth or falsity of the libelous charges against Mr. Lehner made in the article in suit, and that as the defendants were not parties to that litigation they are not bound by the findings, admissions, or adjudication made therein. That the defendants are not so bound is true. But we find nothing in these documents in any way referring to the conduct of Mr. Lehner in respect to which the article in suit defames him. There is nothing in them referring to representations made by him, or to advantage taken or fraud practiced by him. If the documents objected to had tendency to disprove the libelous imputations of the article, the admission of them would doubtless have been prejudicial error had any jury question been raised on the trial to prove their truth. But no such issue was raised and in its absence we do not consider that their admission was prejudicial.

(d) The plaintiff was permitted to testify over the objection of defendants to the overwhelming effect of the publication of March 6th upon the feelings of his wife, his mother, his son, and his daughter, and how the sight and knowledge of their distress and mental suffering aggra-

vated his own. This may have been proper as related to his humiliation and mental suffering by reason of the publication of March 6th, but it obviously had nothing to do with his damages in the instant action.

(e) The plaintiff was permitted to testify over objection of the defendants to his expense incidental to circulating through the mails 30,000 circulars to refute the accusations of the article of March 6th. This was manifestly an item of the expense of his judicial campaign of 1930 and improperly received in evidence.

(f) Testimony was received over objection of defendants to the effect that the publication of March 6th prevented the securing of signers to papers nominating Mr. Lehner for circuit judge, and that the article of March 6th was used against Mr. Lehner in his campaigns for election as circuit judge in the spring of 1930, and for nomination and election as representative in Congress in the summer and fall of that year. This was manifestly improper evidence in the instant case. Whether it was so in the other we need not determine.

(4) All but one of the instructions requested by the defendants of the refusal of which complaint is made related to the law of divorce and collusion between the parties to it and the rule that an attorney cannot represent both sides in a litigation, and that if Mr. Lehner knew the parties were colluding or getting a divorce by agreement he was acting unlawfully. The instructions were proper as abstract propositions, but they had no proper bearing upon the issues submitted to the jury. They bore, if at all, upon the truth of the libelous insinuations of the article in suit. No question as to the truth of the libelous matter was submitted to the jury. There was no request for submission of that question. In this situation that question, if there was any such question, was left to the court under sec. 270.28, Stats.,

and there was no occasion to give any instructions bearing upon it.

The defendants also requested the court to instruct the jury that alleging in the answer the truth of the matters stated in the affidavit of Mrs. Kelm in the divorce case could not be regarded as evidence of malice. Sec. 328.33, Stats., declares that such is the rule. No such instruction was given. The refusal was error, and the error is somewhat aggravated by the fact that in the course of the trial counsel for plaintiff stated that the allegation of the truth in the answer was evidence of malice and this was not corrected by the court at the time or anywhere in the record.

(5) The contention that the trial court erred in submitting the question of the defendants' express malice to the jury cannot be upheld. While there was evidence tending strongly to show that no express malice entered into the publication of April 9th, as it was a practical reprint of an article in the Oshkosh Northwestern prepared by a representative of the Associated Press and according to the testimony of the individual defendants believed by them to be a correct report of a judicial proceeding, there was other evidence, which we do not deem it necessary to state, from which malice might properly be inferred by the jury.

(6) The court erred in including in the judgment the amount of the punitive damages assessed by the jury. The plaintiff showed upon adverse examination of one of the individual defendants, as proof of the wealth of the defendant corporation, that its gross income was approximately $28,000 a year. This could form no basis for fixing the amount of exemplary damages that should be assessed against the individual defendants. It is distinctly held in *McAllister v. Kimberly-Clark Co.* 169 Wis. 473, 173 N. W. 216, and the rule was followed in *Ogodziski v. Gara,* 173 Wis. 371, 181 N. W. 227 and 173 Wis. 380, 381, 181 N. W.

231, that where there are two or more defendants in a tort action wherein exemplary damages are allowable, evidence of wealth of one is prejudicial error as against the others. We adhere to that rule.

The plaintiff urges that where there is no evidence of wealth punitive damages may be awarded in such sum as the jury see fit. There is no evidence of wealth in this case except the item above stated. Plaintiff now argues that this item is not evidence of wealth and forms no basis whatever for estimating the wealth of the defendant corporation, and that therefore there is no evidence of wealth in the case and the assessment of punitive damages by the jury was proper. This argument comes with poor grace from the plaintiff. The high award of punitive damages was no doubt influenced by the item of evidence stated. Plaintiff put in the evidence for the purpose of procuring an enhanced assessment by reason of it. He has accomplished his purpose. He cannot now be permitted to say that because the evidence was improperly received it is not evidence at all, and that the assessment enhanced by it is a proper assessment because no evidence of wealth was introduced.

The trial judge in his written decision of the motions after verdict states that "a trial judge has no right, under *Manol v. Moskin Bros., Inc.* 203 Wis. 47, 233 N. W. 579, to reduce the amount" that the jury assess as exemplary damages. If this be so, it does not follow that a trial judge is without power to interfere if he considers an award of exemplary damages excessive. If this is the idea of the trial judges generally it should be corrected. A trial judge may at least order a new trial. The power of the court in this respect is not open to question. *Holmes v. Jones,* 121 N. Y. 461, 467, 24 N. E. 701. There is nothing in the opinion in the *Manol Case* to indicate that this may not be done. The language of the opinion is perhaps open to the construction

that no option can be given to the plaintiff to accept an amount as fixed by the court or submit to a new trial, as may be done in respect of compensatory damages when they are considered excessive by the court, or that if an option be given to accept a stated amount or submit to a new trial the amount fixed must be the smallest which in the opinion of the court might have been fairly assessed by the jury upon the evidence. The trial judge had fixed the amount which the plaintiff might take as exemplary damages at $3,500, which manifestly is not the lowest amount which a jury might properly assess, as it is within the discretion of the jury to withhold such damages entirely or if they allow them to award as little as they please. Punishment of the defendant is the idea that moves the jury in the exercise of their discretion, and if they exercise it to punish, how little the punishment shall be is as much within their discretion as whether they will punish at all. Obviously if the rule obtaining in civil cases is to be applied, the smallest amount that might properly be awarded by the jury might be mere nominal damages. It therefore seems logical under the rule applicable in case of an excessive award of compensatory damages that if option be given to the plaintiff to accept a stated amount of exemplary damages or submit to a new trial, the amount fixed should be one dollar or some other small sum considered nominal damages. An option order, if an optional order be granted, to accept judgment for the compensatory damages awarded by the jury or submit to a new trial would not be open to objection. A note on the *Manol Case* appears in 6 Wisconsin Law Review, 173, in which it is pointed out that in *Luther v. Shaw*, 157 Wis. 234, 147 N. W. 18, a flat reduction of exemplary damages by the trial court was upheld. At the time this decision was made the rule above stated applicable to excessive awards of compensatory damages had not been definitely laid down.

This rule was first stated in *Beach v. Bird & Wells L. Co.* 135 Wis. 550, 116 N. W. 245. Whether right in principle or not, that rule has been adhered to since whenever the point has received the consideration of the court. *Gerlach v. Gruett,* 175 Wis. 354, 185 N. W. 195; *Muska v. Apel,* 203 Wis. 389, 232 N. W. 593.

(7) If the assessment of $7,000 compensatory damages had been made in a proper trial of this case separate from that of the other, we should not be inclined to disturb it as excessive. But comparison of the amount of the jury's assessment in this action with the amount assessed by it in the other convinces us that the award was influenced by improper considerations. In the other action the compensatory damages were assessed at $8,000; in this they were assessed at $7,000. The injury to reputation and feelings done by the publication of the article of March 6, 1930, with its wide circulation, together with the fact that it was published and circulated during a campaign for high judicial office, was manifestly vastly greater than that caused by the single publication of the article of April 9, 1931. The injury to reputation, such as there was, had been completed. The instant publication no doubt opened an old sore and caused additional injury to the plaintiff's feelings, but that it did not cause anywhere near the injury in this regard that the former publication caused is a matter of clear and unmistakable inference.

We are aware that the trial judge upheld the award of compensatory damages. But it is apparent from his written decision that in doing so he was moved, in large part, by improper considerations. He says upon this point:

"The compensatory damages are fixed by the jury at $7,000. Mr. Lehner was a candidate for Congress at the November, 1931, election. He was beaten by 575 votes for the unexpired term and 620 votes for the full term. The

evidence discloses that the article was used against him in Green Lake county and some of the other counties of the Congressional district. There was evidence of injured feelings, humiliation, distress of mind, loss of business, and other damages. I cannot hold that $7,000 as compensatory damages is not sustained by the evidence."

The Congressional election occurred in 1930, and the article of April 9, 1931, had not then been published. The publication could not possibly have influenced that election or been circulated or been used in that election. If the court imputed its influence in that election as an element of damage in this case it is more than likely that the jury did; and if such inference is not to be indulged in, it is plain that the court considered that the jury did and properly might give the Congressional situation weight in their assessment of damages. Although that situation was not a proper factor in the assessment of damages in this case, that the use and effect of the article of March 6th in that election and also the preceding judicial election operated as a factor in the minds of the jury we have no doubt. The circuit judge refers to loss of business as a result of the publication of April 9th. There was no evidence of loss of business that we can discover. A question was put to Mr. Lehner whether he noticed a falling off of his business after the publication of the article of March 6th, and the answer was that "it was hard to tell." Income tax returns of plaintiff's business as a lawyer for the years 1929 and 1930 showing a net return of $400 less in the latter year were introduced by defendants. This diminution, considering that plaintiff was engaged during a large part of 1930 in running for the office of circuit judge and representative in Congress, would indicate no considerable loss of business through publication of the article of March 6, 1930, and the publication of the article of April 9, 1931, could not have operated retroactively upon his business in the year 1930. In view of the

statements of the trial judge his approval of the award does not have the weight that such approval ordinarily has. It seems plain that injury to feelings is the only considerable item of compensatory damage for the publication of the article in suit in this case and that the wide disparity between the two assessments of such damages indicates that the instant award was based upon improper considerations.

In view of all the above, we are constrained to remand the case for a new trial. That the defendants were greatly prejudiced by the trial of the two actions together is manifest. Perhaps the defendants are not entitled to complain of this as matter of absolute right. It does not appear that the double trial was objected to by them or that they did not consent to it. The evidence objected to was in large part proper in the other case, although not in this, and so far as it was admissible in the other case the defendants' precise rights were doubtless limited to having the court instruct the jury that it was not to be considered in deciding the issues of the instant case.

But the prejudice resulting to the defendants by the trial of the two cases together is so manifest, and manifestly so great, that we consider that the defendants have not had a fair trial of the instant case and that a new trial should be ordered in the interests of justice.

*By the Court.*—The judgment of the circuit court is reversed, with directions for a new trial.

The following opinion was filed February 7, 1933:

FRITZ, J. (*dissenting*). I do not concur in the ultimate conclusion that a new trial should be ordered, even as to compensatory damages, without giving plaintiff the option, upon condition that he waives punitory damages, of taking judgment for the $7,000 awarded as compensatory damages by the jury. That procedure is not disapproved in the

majority opinion, but a new trial is ordered because, in the final analysis, it is said that "the prejudice resulting to the defendants by the trial of the two cases together is so manifest, and manifestly so great, that we consider that the defendants have not had a fair trial of the instant case."

As I read the record, it is manifest that no error was committed which prejudicially affected the jury's award of $7,000, as plaintiff's compensatory damages because of the publication of the libelous article on April 9, 1931. The matters relied upon as basis for inferring prejudice to the defendants to such an extent that they are deemed to have been deprived of a fair trial are in either one or the other of two classes, viz.:

(1) Those which resulted from trying together the two actions based on separate libelous publications; or,

(2) Those which relate to the jury's assessment of $10,000 as punitory damages because of the publication on April 9, 1931.

Thus, in the first class are the alleged errors which are discussed in subdivisions a, b, d, e, and f of part (3) of the opinion. They are all in relation to matters that were in evidence because of that portion of the trial which was in relation to issues of the action based on the March 6, 1930, publication. The consideration and determination of those issues, together with the issues of the action based on the April 9, 1931, article, at one trial, were apparently without any objection on the part of the defendants. Undoubtedly, and not without reason, they believed, at the commencement of the trial, that it was to their advantage—pecuniary and otherwise—to proceed in that manner. If, as the result of receiving evidence which was admissible only as to the first action, inferences arose that were unfavorable to defendants, it is manifest that the opening of the door to evidence as to that action also was likewise taken advantage of by the defendants relying upon the evidence

which was deemed unfavorable to plaintiff. In those respects it is so purely speculative to conclude, even as a matter of hindsight, that the joining of the actions for trial was the cause of the unfavorable verdicts, that there is no reasonable basis for a judicial determination that the defendants did not have a fair trial.

On the other hand, it is clearly unfair to the plaintiff to permit defendants to avoid the consequences of a trial because of evidence which, after all, was received without objection, and was properly in the record, because of the issues involved on the trial. No "heads I win, tails you lose" play should be tolerated in the administration of justice. Why, on an appeal, should the reception in evidence of the March 6, 1930, article be considered to afford any basis for reversal, when that article was received without objection, and defendants never requested the court to limit the effect thereof to the action based thereon? Even though the defamation of the plaintiff, by reason of that article, was not actionable because it could be considered a fair and true report of judicial proceedings, and as such was unconditionally privileged under sec. 331.05 (1), Stats. (*Lehner v. Berlin Pub. Co.* 209 Wis. 536, 245 N. W. 685), nevertheless, there is nothing in that section that impairs the right to introduce that article, as well as any other nonactionable publication by the defendants, which may admit of inferences of express malice in the publication, upon which the action is based. The statement in 1 Wigmore on Evidence (2d ed.) § 404 (2), that "the suggestion that such an (defamatory) utterance when privileged is not thus evidential (on the question of malice) has not been generally accepted and seems unsound," meets with my approval.

The rule that a privileged communication is not admissible in evidence, in an action for libel upon another publication, to prove malice, has very little to support it. It did not receive extended consideration by the court first an-

nouncing the rule, and the opinion does little more than simply to cite the case and adopt the rule. This judicial method is responsible for much anemic law. The case of *Nunnemacher v. State,* 129 Wis. 190, 108 N. W. 627, may be cited as an instance where a rule of law of doubtful validity grew up through the practice of one court merely following the lead of another. Many other instances may be cited. Professor Wigmore disapproves of the principle underlying the rule, and it seems plain to me that it is supported by no principle whatever.

The privileged character of the communication simply extends immunity from liability for its publication. It does not deprive it of its evidentiary value upon other questions, such as the malice of the defendants. A simple illustration will suffice. Words spoken in legislative debate are privileged. That simply means that the speaker is immune from civil liability for anything that he may say during the debate. However, if he makes admissions during the course of such debate which subject him to criminal or civil liability of another nature, is it to be contended that such admissions made by him under such circumstances are not admissible to establish the truth of the facts which constitute his liability in another and different cause of action, either criminal or civil? This does not make him liable for his utterances from which the law renders him immune. It does, however, make his utterances admissible in evidence for the purpose of proving other facts out of which grows a liability of another nature.

However, whatever the rule may be on that subject is immaterial on this appeal in determining whether any error prejudicial to the defendants was committed by the trial court. The record discloses that on his own accord the learned circuit judge expressly instructed the jury:

"In determining the amount of the compensatory damages in case number two as inquired about in question number

five, you must consider the publication of the article of April 9, 1931, and no other article whatever except as hereinbefore fully explained and you must be particular not to consider the publication of March 6, 1930, in the Berlin Evening Journal."

Why did not that unequivocal and explicit instruction eliminate from the jury's consideration the article of March 6, 1930, in assessing compensatory damages because of the publication of April 9, 1931? Likewise, even on the subject of punitory damages, because of the publication of April 9, 1931, is it at all likely that the jury erred in relation to the publication of March 6, 1930, or that prejudice impairing the verdict resulted because of the evidence in relation to that article, when due consideration is given to the following charge to the jury:

"There is one matter I desire you should understand and thoroughly have in mind, not only in determining whether or not you will assess punitory damages, but also in determining the amount thereof, if you determine to assess such damages, and that is you can assess no such damages because of the publication of the article on March 6, 1930. Neither can you consider the publication of March 6, 1930, in determining whether or not you will assess punitory damages for the publication of the article on April 9, 1931, nor in determining the amount of such damages if you shall have determined to assess them. Hence, in considering this question you should entirely disregard and keep out of your deliberations in considering this question the article published March 6, 1930."

Those simple words, "you can assess no such damages because of the publication of the article on March 6, 1930," certainly left no occasion for doubt in the mind of any juror that that article afforded no basis for assessing punitory damages because of the April, 1931, article.

On the other hand, there is no occasion to hold that the jury's award of compensatory damages was improperly affected by the evidence referred to in subdivisions d, e, and

f of part (3) of the majority opinion. That evidence related solely to consequences of the first publication, and did not tend to prove any of the elements which entered into the assessment of compensatory damages because of the April, 1931, article. Undoubtedly the jury took those elements into consideration in assessing the compensatory damages sustained by plaintiff because of the first article, but there is no reason to assume that the jury misunderstood the bearing or application of that evidence, and again allowed compensation for those elements in assessing the damages for the second libel. The error in admitting proof as to the gross income of one of the defendants impairs the jury's assessment as to punitory damages. Likewise, that assessment, and particularly the jury's finding that the defendants were actuated by express malice in causing the article of April 9, 1931, to be published, might have been otherwise if the jury had been instructed, as requested by defendants, that their allegations, in their answer as to the truth of certain matters stated in the article, could not be regarded as evidence of malice. However, the effect of those errors is limited to the award of punitory damages, and it is only in that respect that the judgment cannot be affirmed. As to the award of $7,000 compensatory damages as the result of the publication of April 9, 1931, it is again wholly speculative to conclude that the disparity between that assessment and the assessment of such damages at $8,000, as the result of the March 6, 1930, publication, "indicates that the instant award was based upon improper considerations." Preceding that conclusion there is the statement in the opinion that if the $7,000 assessment had been made in a proper trial, separate from the other case, "we should not be inclined to disturb it as excessive." If such an award when made upon a proper trial, upon presumably such of the evidence as was proper to be received on that subject, should not then be

disturbed as excessive, why should it now be disturbed when substantially all of the proof, which it is now claimed the jury may have improperly taken into consideration in arriving at the $7,000 award, was rightfully in evidence because the defendants had not objected to trying the two actions together?

Neither can I ascribe to the propositions that—

"The injury to reputation, such as there was, had been completed. The instant publication no doubt opened an old sore and caused additional injury to the plaintiff's feelings, but that it did not cause anywhere near the injury in this regard that the former publication caused is a matter of clear and unmistakable inference."

What basis is there for such conclusions? Is it not more probable, or at least as apt to be true, that in the minds of most of those who were reached by the first publication, who had theretofore thought well of the plaintiff, and who within a week thereafter had read the plaintiff's explanation as published even by the defendants in their newspaper, and also shortly thereafter had read the plaintiff's circulars in explanation and vindication of his conduct in relation to the subject matter of that first publication, the plaintiff continued to enjoy his good reputation. The "old sore" occasioned by that first publication may thus have been healed, but if thereafter the defendants, by the publication of April 9, 1931, "no doubt opened an old sore" by creating the impression that by an adjudication this court had upheld the charges of misconduct by plaintiff, which when published by defendants had caused the "old sore," then there is good reason to believe that the later publication may have caused even greater injury to plaintiff's feelings and reputation. That later publication again stirred up, in a manner that was decidedly aggravating to plaintiff, a controversy on a subject as to which he was rightly highly sensitive. By falsely

creating the impression that a decision of this court in effect substantiated the earlier charges of misconduct by plaintiff, which had been made in defendants' prior publication, plaintiff may well have been damaged to a greater extent than by the first publication.

Mr. Justice OWEN and Mr. Justice WICKHEM have authorized me to add that they concur in this opinion.

A motion for a rehearing was denied, with $25 costs, on April 11, 1933.