LEHNER, Respondent, vs. KELLEY and others, Appellants.

*April 3—May 1, 1934.*

*J. L. Kelley* of Fond du Lac, for the appellants.

For the respondent there was a brief by *Lehner & Lehner* of Princeton, attorneys, and *Hill, Beckwith & Harrington* of Madison of counsel, and oral argument by *Philip Lehner.*

WICKHEM, J.   This appeal involves substantially the same libel as that heretofore dealt with by this court in *Lehner. v. Berlin Publishing Co.* 211 Wis. 119, 246 N. W. 579.   The facts giving rise to the publication are well stated in that case and need not be repeated here.

The defendant Printing Company is the owner and publisher of the Princeton Republic, having a circulation of approximately seven hundred copies in Green Lake and Marquette counties.   The defendant A. H. Rimpler is the managing editor.   Defendant Kelley, at the time of the publication in question, was a stockholder and vice-president, but was not active in the management of the paper.

On April 16, 1931, defendants published an article substantially like that involved in the case of *Lehner v. Berlin Publishing Co., supra,* to the effect that the supreme court of Wisconsin had sustained Judge C. M. DAVISON in a deci-

sion setting aside a divorce decree awarded to Ewalt H. Kelm. The article proceeded to state that the decree had been set aside after Vivian W. Kelm, the defendant, swore to an affidavit charging that plaintiff, an attorney, had induced her to sign certain documents "through misrepresentation and fraud." The import of the article was that the supreme court had sustained Judge DAVISON in finding fraud on the part of plaintiff, whereas in fact the supreme court had merely dismissed plaintiff's appeal because the order was not appealable. It is undisputed that this article was copied from and credited to the Oshkosh Northwestern, a newspaper published at Oshkosh, Wisconsin. Defendants alleged in their answer that the article was published in good faith, and in the belief that it was an accurate report of the supreme court decision. It denied that the article was published maliciously or with intent to injure plaintiff, and alleged that it was merely a customary reprint of news items from reputable and established newspapers. It was further pleaded by defendants in mitigation of damages that the article published by them had theretofore been published not only by the Oshkosh Northwestern, having large circulation all over the state of Wisconsin, and particularly the counties of Green Lake and Marquette, but by many other newspapers in and about the state. The defendants further pleaded in mitigation of damages that long prior to the date of publication all the matters contained in the article were known to practically all the readers of the Princeton Republic; that the whole matter had been thrashed out during previous campaigns by plaintiff for circuit judge and congress. It is further pleaded in bar that plaintiff commenced an action in the circuit court against the Oshkosh Northwestern, and that thereafter plaintiff settled his cause of action against the Oshkosh Northwestern; that the republication of the article by the Republic Printing Company was the natural and probable result of the original publication in the Oshkosh

Northwestern, and that this settlement constitutes a bar to recovery against defendant.

The first question presented upon this appeal is that raised by the plea in bar. Defendants urge that the Oshkosh Northwestern, having published the original article reporting the decision of the supreme court, is liable for all of the natural and probable consequences of that libel; that one of these consequences is the likelihood of its republication by other newspapers, and especially by small country weeklies such as defendant; that since plaintiff made a complete settlement with the Oshkosh Northwestern, that constitutes a bar to recovery against defendants. If defendants' premise is correct, their conclusion follows as a matter of course. The Oshkosh Northwestern and defendants are not joint tort-feasors, and plaintiff may recover from each the damage that each has caused him. However, if the Oshkosh Northwestern sustained a liability to plaintiff for all damages caused by the republication of the article, plaintiff can have only one satisfaction, and the settlement ended plaintiff's cause of action against defendants. It is of course true that, had plaintiff first recovered from defendants, he could thereafter sue the Oshkosh Northwestern and recover except for such damages as were involved in the republication. Since defendants' conclusions are valid, it becomes necessary to examine the premise.

The courts have quite generally stated that the original publisher of a libel sustains liability for the natural and probable consequences of that publication. See note 16 A. L. R. 726. There is a conflict of authority whether the unauthorized repetition of the libel may be said to be one of the natural and probable consequences. In *Burt v. Advertiser Newspaper Co.* 154 Mass. 238, 28 N. E. 1, 6, 13 L. R. A. 97, the trial court, in charging the jury, said:

"[The defendant] is not responsible for the injurious act of another in publishing, but he is under obligation to the

plaintiff to take into account and into consideration what will be the natural and probable consequences of his act in putting the libel into circulation. To that extent he is responsible, and only to that extent."

In commenting upon this, Mr. Justice HOLMES said:

"The meaning which naturally would be conveyed to the jury is that, although a particular republication cannot be recovered for, damages may be enhanced by 'the general probability of unlawful republications. This is not the law. Wrongful acts of independent third persons, not actually intended by the defendant, are not regarded by the law as natural consequences of his wrong, and he is not bound to anticipate the general probability of such acts, any more than a particular act by this or that individual." ,

The weight of authority sustains this view. See *Maytag v. Cummins*, 260 Fed. 74, 171 C. C. A. 110, 16 A. L. R. 717. See note 16 A. L. R. 726.

In *Gough v. Goldsmith*, 44 Wis. 262, this court held that a letter constituting a libel but containing no authorization to the recipient to show it to others, stated no cause of action for damages arising out of the recipient's act in so showing the letter, such damages not being the natural and immediate consequence of the publication charged to defendant. The letter involved in that case was not libelous *per se,* and special damages had to be shown in order to recover. However, that would not be enough, standing alone, to exclude the case as an authority, since it would be quite as natural and probable for the recipient to show the letter to others had the material been libelous *per se.*

In *Suick v. Krom*, 171 Wis. 254, 177 N. W. 20, it is stated that the preponderance of authority supports the proposition that one who utters a slander is not responsible for the unauthorized repetition thereof, but that "this rule, in its full force, has not been adopted in this state." One of the cases cited by the court as a statement of the majority rule is *Terwilliger v. Wands,* 17 N. Y. 54. This case is

quoted from by the court in the *Gough Case,* and made the basis of that decision. The *Gough Case* was not cited in the *Suick Case,* and was doubtless not called to the court's attention. It is our conclusion that the *Gough Case* enunciated the majority rule, and established it for this state. While the matter is highly controversial, and the rule has been vigorously attacked, we are not convinced that it is unsound in principle or unjust in operation, and we adhere to it.

It follows that the Oshkosh Northwestern was not liable, either upon a separate cause of action or by way of aggravation of damages, for the voluntary and unjustifiable repetition by defendants of the original libel, and that the settlement did not bar plaintiff's cause of action against defendants.

It is next contended that the evidence does not sustain the conclusions of the jury that defendants were actuated by express malice. A careful examination of the record convinces us that there was a jury question upon this issue as to each of defendants, and we deem it unnecessary to review the evidence in detail. The same comment may be made with respect to the contention that there is no evidence that the defendant Kelley published or had a culpable part in the publication of the article complained of.

Defendants next contend that after finding the damages assessed by the jury to be excessive, and that $2,000 was the highest sustainable award, the court erroneously gave plaintiff an option to accept this sum instead of the lowest sum that an impartial jury, properly instructed, "would reasonably award." *Stangarone v. Jacobs,* 188 Wis. 20, 205 N. W. 318. This was clearly error under the rule laid down by this court. *Stangarone v. Jacobs, supra; Campbell v. Sutliff,* 193 Wis. 370, 214 N. W. 374; *Muska v. Apel,* 203 Wis. 389, 232 N. W. 593. It is contended by defendants that the proper amount to be fixed as one of plaintiff's options should be a merely nominal sum. The contention that

a jury, properly instructed, would or might reasonably award merely nominal damages we deem to be unsound. While it is true that due to the currency of this libel in the community, a very considerable part of plaintiff's damages had already been sustained, the publication of an article stating that the truth of the charges against plaintiff had been sustained by this court must necessarily have resulted in added humiliation and mental suffering to a substantial degree. Plaintiff contends that the jury's award was not excessive and should be sustained. It is our conclusion that having accepted the option given by the court, he is in no position to question the conclusion of the trial court that the award was excessive. *Hildebrand v. American Fine Art Co.* 109 Wis. 171, 85 N. W. 268; *LeBeau v. Minneapolis, St. P. & S. S. M. R. Co.* 164 Wis. 30, 159 N. W. 577; *Agnew v. Baldwin,* 136 Wis. 263, 116 N. W. 641.

It is next contended that the court erred in its instructions to the jury. The court gave the following instructions with respect to compensatory damages:

"The fact that the publication in the Princeton Republic is similar or identical with the prior publications in the Oshkosh Daily Northwestern, in the Berlin Evening Journal, and the Tri-County News is no defense to compensatory damages due the plaintiff because of the article published in the Princeton Republic. Regardless of prior publications in other newspapers the plaintiff is entitled to some compensation for the article of April 16, 1931, published in the Princeton Republic, and it is for you to determine the amount.

"In answering this question you will be required to assess some more than mere nominal damages as compensatory damages. The plaintiff is entitled to some substantial compensatory damages, but in assessing these damages you must not allow any sum whatever because of the publication of substantially the same article in the Oshkosh Daily Northwestern, the Berlin Evening Journal, the Tri-County News, or in any other newspaper. The damages you are to assess are those and those only caused by the publication of the article in the defendants' newspaper on April 16, 1931."

The instructions are literally correct. The jury were instructed that the fact that other newspapers had previously published articles identical with or similar to that published by defendants is no defense to compensatory damages, but that in assessing compensatory damages the jury were not to allow any sum for such damages as might have been caused by other publications. Defendants requested the court to instruct the jury that they might consider the other publications solely for the purpose of determining whether or not defendants added to the knowledge and information of readers of the Princeton Republic of the matter involved. In support of their position that such an instruction should have been given, defendants cite *Lehner v. Berlin Publishing Co.* 211 Wis. 119, 246 N. W. 579. In that case this plaintiff brought separate suits against the Berlin Publishing Company. The first cause of action was based upon an article published March 6, 1930. This article was a report of the proceedings before Judge DAVISON in the Kelm case, and was ultimately held by this court to be absolutely privileged. *Lehner v. Berlin Publishing Co.* 209 Wis. 536, 245 N. W. 685. The second was upon an article published April 9, 1931, which was substantially identical with that involved in the instant case. The two causes were tried together. The jury assessed the damages upon the first cause of action at $8,000, and upon the second at $7,000. It was stated by this court that a comparison of the jury's assessment upon the second cause of action with that assessed upon the first, evidenced the fact that the second award was influenced by improper considerations. The court said:

"The injury to reputation and feelings done by the publication of the article of March 6, 1930, with its wide circulation, together with the fact that it was published and circulated during a campaign for high judicial office, was manifestly vastly greater than that caused by the single publication of the article of April 9, 1931. The injury to reputation, such as there was, had been completed. The instant

publication no doubt opened an old sore and caused additional injury to the plaintiff's feelings, but that it did not cause anywhere near the injury in this regard that the former publication caused is a matter of clear and unmistakable inference."

While this statement was addressed to the assignment of error that the compensatory damages were excessive, it is claimed to bear upon the present question to this extent, that the court should have instructed the jury that they might consider prior publications of substantially similar articles for the purpose of determining the extent to which defendants' article independently caused damage to the plaintiff. On the other hand, plaintiff cites the case of *Pfister v. Milwaukee Free Press Co.* 139 Wis. 627, 121 N. W. 938. In that case the answer alleged that the Milwaukee Sentinel and other Milwaukee papers, as well as Chicago papers circulating in Milwaukee, "published the indictment returned against him, together with the statement made by plaintiff in reference thereto, as well as other incidents in reference to the transaction, quite similar to the matter published by the defendant corporation. . . . " On motion of plaintiff these allegations of the answer were stricken out. The court held that this was proper, stating:

"The courts generally hold that evidence of this character is improper and cannot be received in reduction or in mitigation of damages. . . . Here the portion of the pleading stricken out, at best, simply showed that other articles of like tenor and effect to those published in the Free Press were also published in other papers."

There is no question of the correctness of the ruling in the *Pfister Case,* nor is there any disposition upon the part of this court to repudiate it. The mere fact that others published the libelous matter is not material, either as a defense or in mitigation of damages. However, if such publications have preceded that for which the action is brought, and it

can be shown that these publications were so generally circulated that the publication in question did not add to the information of the people of the community, certainly that is a factor having a legitimate bearing upon the subject of compensatory damages. However, here there was no request that the court instruct the jury that they might consider the effect of the article of March 6, 1930, or the fact that the subject-matter of this libel was generally current during two previous political campaigns. The court was requested merely to instruct with reference to substantially identical publications previously appearing in the Oshkosh Daily Northwestern, the Berlin Evening Journal, the Tri-County News, and other papers. The request being so limited, the question is whether the instruction of the court did not substantially cover the matter. It is our conclusion that it did. The jury were instructed to eliminate from their consideration any damage or effect which might have been caused by these publications, and to consider only the effect of the publication by defendants. It seems to us that this substantially covered the subject of the request.

It is further contended that the court erred in failing to instruct the jury that they might consider the fact of previous publication in a reputable newspaper in mitigation of damages, if published under the belief that it was true. We find no request for such an instruction, and in the absence of a request, the failure to give the instruction cannot be assigned as error.

It is next contended that the court erred in instructing the jury with respect to malice. The court said :

"You should determine from the evidence whether or not prior to the publication in question there existed a feeling of ill-will by the defendants *or any of them* towards Mr. Lehner, and if you determine there was then you may give it such weight as you deem it entitled to in considering this question."

This instruction was erroneous and prejudicially so, in that it permitted the jury to find exemplary damages in case any of the defendants were actuated by express malice. The result of such an instruction is to make one of· several defendants liable for the malice of another, and an award of exemplary damages cannot be sustained upon such an instruction.

Numerous other errors are assigned, most of them without argument, and comment upon all of them would unduly extend this opinion without performing a useful service. They have all been carefully examined and considered, and found either not to be erroneous or not prejudicially so.

To summarize: There was prejudicial error with respect to the character of the option given to plaintiff, and with respect to the instructions to the jury upon exemplary damages. Since there is no prejudicial error affecting compensatory damages, we conclude that the judgment should be reversed, with directions to the trial court to fix the lowest sum that a jury properly instructed, would reasonably award, and to give plaintiff an election to waive exemplary damages, and to enter judgment for this sum, or in the event of plaintiff's failure to do so, for a new trial.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings in accordance with this opinion.