THROM, Appellant, vs. KOEPKE SAND & GRAVEL COMPANY, Respondent.*

*December 6, 1951—January 8, 1952.*

---

\* Motion for rehearing denied, with $25 costs, on March 4, 1952.

480

For the appellant there was a brief by *Arthur DeBardeleben,* attorney, and *DeBardeleben & Mahoney* of counsel, all of Park Falls, and oral argument by *Arthur DeBardeleben.*

For the respondent there was a brief by *John M. Whitmer* of Park Falls, attorney, and *Benton, Bosser, Becker, Parnell & Fulton* of Appleton of counsel, and oral argument by *Mr. Whitmer* and *Mr. David L. Fulton.*

GEHL, J.   Plaintiff contends that the testimony offered by him that his land was not cleaned up and restored to farming condition, being uncontradicted and undisputed, could not be disregarded by the jury, and that, therefore, there was no

evidence to support the finding. He offered proof that the land had been under cultivation for the production of alfalfa hay prior to defendant's operation; that it was left covered in part with rock and gravel; that considerable of the top soil had been removed leaving rocks sticking out of the ground; that a pile of rock of considerable size which covered some of his timber had been left at one end of the field, and that to re-cover the land with top soil would cost $3,000 or more.

The testimony of the plaintiff is met by the testimony of one Beil who is a farmer and for nineteen years had been town assessor. He testified that most of the land in the area of plaintiff's land, including that of the plaintiff, is rocky and had been assessed at a value of from $20 to $25 per acre; that he had seen the farm two or three times in each year, and that during the year 1950, prior to the trial, he had seen it twice. With respect to the precise question with which we have to deal he stated:

"This year I went back there twice because the first time I looked at it it did not look right to me. I went back a second time and I figured if a man had harrowed it up and seeded it down he would have got a fair crop of hay off it. . . . I figured if it was harrowed up it could be used for farm land. . . . If it were mine I would have had it harrowed, had it worked over this spring and tried to raise a crop on it."

We are not to consider the quantum of defendant's evidence; our function is only to determine whether there is any credible evidence to support the verdict. This familiar rule requires no citation of authorities. We conclude that the testimony of the witness, Beil, suffices. He did not, it is true, testify that in its present state the land had been restored to *good* farming condition. But that was not defendant's obligation; the contract required it to restore it to "farming condition." It is also true that he testified,

in answer to the question whether he considered that it was in farming condition, that to make it useful it would have to be harrowed and seeded. That was not defendant's obligation. We may take judicial notice of the fact that even upon the best of farm land the soil must be harrowed or plowed and seeded down to produce a crop, and that those operations are required periodically. The testimony of the witness, Beil, supports the verdict.

Against objection, defendant's witness, the town assessor, was permitted to testify that the land had been assessed at from $20 to $25 per acre and a real-estate dealer was permitted to testify that the land when cultivated would be worth about $30 per acre. Plaintiff contends that since the proper measure of damages is determined by the terms of the contract, the cost of restoring the land, this was error. If it was error it was not prejudicial. Upon the jury's finding that plaintiff had no cause of action, plaintiff was not entitled to any damages, and he could not have been prejudiced because of an error which might have tended to reduce the amount of his recovery had the jury found in his favor. *Toepfer v. Sterr*, 156 Wis. 226, 145 N. W. 970.

The court instructed the jury that the term,

" 'Farming condition' has no technical definite meaning in the law or elsewhere as far as I know, and you must use your best judgment as to what that means, that is, whether or not the company restored the place to 'farming condition.' That does not mean that it must be restored to exactly what the land was before, but whether it was restored sufficiently so as to make it proper for farming. That question must be determined by you from the evidence."

No judicial definition of the term "farming condition" has been called to our attention, nor have we been able to find one. It is an ordinary term used in a conventional sense by people residing in a farming area and familiar with the character and quality of farm land. It is doubtful that

a definition of the term which might make its meaning more clear to the jury could be devised, as plaintiff urges the court should have done. If plaintiff found it possible he should have made a request therefor, which he failed to do. He cannot be heard to complain. *Lehner v. Kelley,* 215 Wis. 265, 254 N. W. 634.

Defendant has moved to review the action of the trial court in denying it costs. The general verdict was returned on November 16, 1950. On November 22, 1950, plaintiff served and on November 27, 1950, filed notice of motion and motions for an order setting aside the verdict and in the alternative for a new trial. His motions were denied and that of defendant for judgment granted on January 10, 1951. Judgment was entered on January 29, 1951. It denies defendant costs. Sec. 270.31, Stats., authorizes the clerk of court under certain circumstances to enter judgment upon receiving the verdict. Sec. 270.66 provides that within sixty days after verdict on which the clerk is authorized to enter judgment without an order, "or within sixty days after an order to enter judgment is filed" the successful party may tax costs.

Plaintiff's motion for a new trial required determination and an order for judgment, which, as appears from the above, was made on January 29, 1951. The motion operated as a stay of proceedings until disposed of and required the application of the provisions of sec. 270.66, Stats., by the terms of which defendant had until March 10, 1951, to tax costs. *Milwaukee Masons & Builders' Asso. v. Niezerowski,* 95 Wis. 129, 70 N. W. 166; *Dresser v. Lemma,* 122 Wis. 387, 100 N. W. 844. Defendant applied for costs on January 29, 1951. They should have been awarded.

*By the Court.*—Judgment modified by providing therein that defendant be awarded costs and, as so modified, affirmed.

CURRIE, J. (*dissenting*). By the terms of the written lease agreement the defendant agreed upon completion of

its operations under the agreement to *"clean up and restore to farming condition"* any of plaintiff's land which had been used by defendant in its operations.

In addition to the testimony of plaintiff on this point summarized in the majority opinion the plaintiff also testified that he had been able to operate farm machinery on the three acres in question including a six-foot mower sickle operated by a tractor. It is obvious that in its present condition, as left by the defendant, such equipment cannot be operated on the land.

A reasonable interpretation of the phrase *"restore to farming condition"* would seem to be that defendant was required to place plaintiff's land back in substantially the same condition it was in before defendant occupied it in so far as its suitability for farming purposes is concerned. The majority opinion seems to give no significance to the employment of the word *"restore"* in the covenant of the defendant which is at issue in the case.

The testimony of the witness, Beil, which is quoted in the majority opinion, would not support a finding by a jury that the defendant had placed plaintiff's three acres of land back in substantially the same condition, so far as their suitability for farming purposes is concerned, as they were in prior to defendant's occupancy and operations. In substance all that Beil testified to on this issue was that he considered it possible to have harrowed and seeded this land in its present condition and that, if this had been done, a fair crop of hay would have resulted. His testimony was highly speculative at best. He did not testify that in his opinion the land in its present condition would produce the same good crop of alfalfa as it had produced prior to defendant's occupancy nor that the same kind of farm machinery could be safely used in farming it that plaintiff had previously been able to use on this land.

I cannot agree with the conclusion of the majority opinion that the admission into evidence over the objection of plaintiff's counsel of testimony, that the original value of plaintiff's land before defendant's occupancy was $20 to $30 per acre, was not prejudicial. The admission of such testimony was entirely irrelevant on the issue of plaintiff's damages, the only conceivable basis for admitting it. Apparently it was defendant's theory that in no event would it be held liable for damages in excess of the original value of plaintiff's land, but the leasing agreement placed no such limit on defendant's liability if it failed to restore plaintiff's land to farming condition. The rule of damages applicable to ordinary personal property does not apply because here we have a contract relating to real estate.

The admission of such improper testimony could scarcely fail to be anything but prejudicial. Under the leasing agreement the defendant had paid to the plaintiff two hundred dollars rental for one season's occupancy. The jury, upon hearing testimony that the three acres were only originally worth from sixty dollars to ninety dollars, might very readily have concluded therefrom that plaintiff sustained no damage, even though defendant had entirely failed to perform its covenant to restore the land to farming condition, and as a result thereof have returned the general verdict they did in favor of defendant.

I would reverse the judgment and remand with directions that a new trial be had.

I am authorized to state that Mr. Justice BROADFOOT joins in this dissent.