Fahr v. Hayes.

---

AUGUST I. FAHR v. HENRY HAYES.

1. In order to bring a criminatory statement within the class of communications having a qualified privilege, the burden is on the defendant, in an action for libel or slander, to show, first, that the occasion was

Fahr v. Hayes.

privileged, and second, that the statement was made under an honest. belief in its truth.

2. When one person applies to another for credit, and the latter seeks information from a third as to the trustworthiness of the applicant, a privileged occasion arises for communications bearing on that subject.

3. When the qualified privilege of a criminatory statement has been shown, the burden then rests upon the plaintiff to prove express malice. Express malice here means some motive actuating the defendant. different fromth at which *prima facie* rendered the statement privileged, and being in itself contrary to good morals.

4. Indignation towards a person for his supposed crime is not *per se* contrary to good morals.

5. The fact that the form of expression, used by the defendant on a privileged occasion, was such as to evince indignation at the plaintiff for a supposed crime will not destroy the privilege, if the substance of the statement was pertinent to the privileged matter and was honestly believed by the defendant.

6. The fact that a communication having *prima facie* a qualified privilege was made in the hearing of third persons not legally interested will afford no evidence of express malice, when their presence appears to have been casual and not sought for by the defendant.

7. When the motive with which a statement is made, upon an occasion not privileged, is the same as that which the law would have sanctioned if the occasion had been privileged, it affords no evidence that the same statement, made upon a privileged occasion, was inspired by express malice.

In tort. On rule to show cause why a verdict for the plaintiff should not be set aside.

Argued at November Term, 1887, before BEASLEY, CHIEF JUSTICE, and Justices DIXON, REED and MAGIE.

For the plaintiff, *Samuel Kalisch.*

For the defendant, *F. W. Stevens.*

The opinion of the court was delivered by

DIXON, J. The plaintiff sued the defendant for slander, uttered on April 15th, 1886, in the office of George Thoma, Jr., at the corner of Broadway and Cortlandt street, New York. The words used are said by the plaintiff to have been as follows, on direct examination : " You thief, you ! Don't

you show your face in Maiden Lane any more; you stole two chains from my factory, and you are indicted; within a few days from now you are going to state's prison. What would you [the bystanders] think of this man if he was to leave your office and have two watches in his pocket?" and on cross-examination: "You thief, you! You dasn't show your face in Maiden Lane; you have been arrested for stealing gold chains; what would you [the bystanders] think of this man if he was to leave this office and you would find two watches in his pocket?"

The circumstances which led up to the utterance of the words were these: The defendant's firm, Wheeler, Parsons & Hayes, had a jewelry factory in Newark, and an office in 62 Maiden Lane, New York; the plaintiff was a peddler of jewelry, and for several years prior to March, 1886, had bought jewelry on credit at the defendant's factory. Jerome W. Simpson, who was manager of the factory, reported to the defendant that thirteen gold chains had been missed in the factory between February 1st and March 6th, 1886. On March 18th, 1886, he told the defendant that he had found the party who had taken the chains; that on the day before the plaintiff had been at the factory, had looked at the roll of chains which Simpson had counted and weighed before the plaintiff came in, and that when the plaintiff had left five chains were gone. On the evening of March 22d, 1886, Simpson told the defendant that on that day the plaintiff had come to the factory for chains, had been shown a roll, had selected eight to be taken on credit, had then left the factory with the eight; that the roll had then been examined, and two other chains were lacking; that the chief of police of Newark had been at once notified; that he had pursued the plaintiff, had arrested him upon the street, and had found the eight chains in his satchel and the two chains loose in his overcoat pocket. The chief of police confirmed to the defendant Simpson's statement, with regard to the arrest and the finding of the chains upon the plaintiff, and the defendant had formed an assured belief of the plaintiff's guilt. On April 15th, 1886, the plaintiff,

being on bail to answer for the larceny, went to Mr. Thoma's office to purchase jewelry on credit, and being asked by Mr. Thoma with whom he had been dealing, produced, among others, many bills of Wheeler, Parsons & Hayes, showing his credits with that firm, and told Thoma that he was arrested, accused of stealing chains at their factory, but was innocent. Thoma then took the plaintiff's card and went over to the defendant's office, where, according to the testimony of Mr. Thoma, which is substantially uncontradicted, the following colloquy took place between himself and the defendant : " Mr. Hayes, this man [showing the plaintiff's card] refers me to you." The defendant said : " What, this man ! That scoundrel has cheek enough to send over to me for a reference ! " Thoma replied : " Yes." Defendant asked : " Is he over there now ? " Thoma answered : " Yes, come over with me." Defendant said : " Well, I am too willing to go over with you." Thoma and the defendant thereupon went to Thoma's office, where the alleged slander was then uttered, in the presence of Thoma and others who had desks in the same room. Before this time the accusation against the plaintiff had been brought to the attention of the grand jury of Essex county, who, on April 19th, 1886, presented an indictment against him for the crime.

The plaintiff obtained a verdict at the Circuit, which is now before us on a rule to show cause.

The defendant insists that the jury should have been directed to find a verdict for him, on the ground that the alleged slander was a privileged communication.

The question is whether the defendant's statements come within that class of communications which is regarded in law as having a qualified privilege.

In order to bring a case within this class, *prima facie*, the burden is on the defendant to show, first, that the occasion was privileged, and second, that the statement was made under an honest belief in its truth.

It is unquestioned law that when one person applies to another for credit, and the latter seeks information from a

third as to the propriety of giving credit to the applicant, a privileged occasion arises for communications bearing upon that subject. *Ormsby* v. *Douglass*, 37 *N. Y.* 477; *King* v. *Patterson*, 20 *Vroom* 417. These were the circumstances of the present case. The plaintiff applied to Thoma for credit; Thoma sought information from the defendant upon the point whether he should give credit, and in response the defendant's statements were made, and they related to the plaintiff's trustworthiness. No doubt, therefore, the occasion was privileged.

It is equally clear that the defendant's statements were made under an honest belief in their truth. His information was such as would almost inevitably engender in his mind the belief that the plaintiff had stolen the chains, and if we assume (what the plaintiff did not uniformly allege in his testimony) that the defendant asserted that the plaintiff had actually been indicted, even that, in view of the fact that the matter had been laid before the grand jury and of the strong grounds of suspicion against the plaintiff *prima facie*, should be considered as only in accordance with the defendant's belief.

So much being established on behalf of the defendant, it then became incumbent on the plaintiff to show that the defamatory words were uttered out of what is called *express malice*. If he produced any evidence from which express malice could legally be inferred, then it was proper to submit the question to the jury; if he did not, a verdict for the defendant should have been directed.

By express malice in this connection is meant some motive, actuating the defendant, different from that which *prima facie* rendered the communication privileged, and being a motive contrary to good morals. The existence of such a motive may be legitimately gathered from the character of the defamatory communication—as if the terms used be utterly beyond and disproportionate to the facts which the defendant has reason to believe (*Spill* v. *Maule*, *L. R.*, 4 *Exch.* 232); or from the circumstances under which the communication is made—as if an opportunity is sought to make it before third persons not legally interested in hearing it, rather than to those only who

are so interested (*Toogood* v. *Spyring*, 1 *C., M. & R.* 181); or from any extraneous facts which in reason tend to prove it.

The motive which in the present case the law *prima facie* imputes to the defendant, in regarding his conduct as innocent, is a desire to give Thoma true information, in order to prevent his crediting the plaintiff, whom the defendant thought not worthy of credit, and hence the question here is whether the evidence tended to establish any other motive contrary to good morals.

The language used by the defendant fairly discloses another motive than the imputed one, not indeed inconsistent, but rather conjoined with it, viz., indignation towards the plaintiff for his supposed crime. This motive, however, is not contrary to good morals, and therefore cannot be ranked as malicious *per se*, and so long as it does not impel its possessor into an illegal act it cannot subject him to the condemnation of the law. At the time now under review it did not betray the defendant into any expression beyond what was pertinent to the subject of Thoma's inquiry, and was honestly believed by the defendant, and therefore was legalized by the privileged occasion and motive. ∥

The circumstances in which the defamatory statements were uttered present no signs of illegality. It is true there were hearers who are not shown to have been lawfully interested, and that the defendant had an opportunity, in his own office, of making the disclosures to Thoma without further publicity. But he was entitled not merely to warn, but to convince Thoma of the danger of trusting the plaintiff, and for this purpose he had a right to confront the plaintiff and there declare whatever was of itself within the privilege. The presence of bystanders at that meeting was a mere casual incident, not in any sense sought for by the defendant, and for which, therefore, he should not be held responsible.

The only extraneous fact to which counsel referred as evidence of express malice was that within a week after the statements to Thoma, the defendant sent to various jewelry firms in New York and elsewhere a circular stating that the

plaintiff was trying to obtain credit by exhibiting the bills of Wheeler, Parsons & Hayes, and that he had been arrested for stealing gold chains at their factory, two of which had been found upon him.

In an action for libel or slander, publications subsequent to that mentioned in the declaration are competent testimony to show express malice. *Evening Journal Association* v. *Mc-Dermott*, 15 *Vroom* 430. If, however, the subsequent publications be privileged, they will be no evidence of malice. *Ib.*

The fact that the plaintiff had bills of Wheeler, Parsons & Hayes, showing a long course of credit with that firm, and had exhibited those bills as a recommendation to credit with another jeweler, would seem to raise on the part of Wheeler, Parsons & Hayes a moral duty to annul those credentials when they had become untrustworthy, and the circular would seem to have been a not unreasonable means to that end. But it is questionable whether, under *King* v. *Patterson*, 20 *Vroom* 417, this is sufficient to render the circular privileged, without showing also the special interest of those to whom it was sent. It will therefore be considered as not privileged.

The want of privilege arises, however, not from the motive, but solely from the occasion. The motive was precisely like that which the law imputes to the defendant in his communication to Thoma, a desire to convey true information to those receiving the circular, in order to prevent their giving credit to the plaintiff, whom the defendant thought unworthy of it. Had the occasion been one when these persons had a special interest in the information, the privilege would have been complete. But for present purposes it is only the motive that we have to deal with, and it is plain that the light which the motive actuating the defendant in sending out the circular throws back upon his state of mind at the interview with Thoma, only makes it clearer that his motive in that interview was one which the law sanctions and protects.

So that, neither in the language or circumstances of the criminatory statements, nor in any extrinsic facts, do we discover any rational ground for charging the defendant with

express malice, and hence we conclude that a verdict in his favor should have been directed.

If there be any testimony indicative of express malice to which our attention has not been directed, it must be so slight in comparison with the opposing proofs, that the verdict based upon it should be set aside as contrary to the great weight of evidence.

Let the rule to show cause be made absolute.