# Richmond

MAX TURK AND G. L. TURK, PARTNERS, TRADING AS AMERICAN LOAN COMPANY V. LESTER LEE CLARK, ADAM THOMAS AND BASIL THOMAS.

June 16, 1952.

Record No. 3931.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

*Brantley B. Griffith,* for the plaintiff in error.

*W. Clyde Dennis,* for the defendant in error.

MILLER, J., delivered the opinion of the court.

Max Turk and G. L. Turk, partners, trading as American Loan Company, instituted this action against Lester Lee Clark, Adam Thomas and Basil Thomas to recover $797.30, with interest (and 15 per cent attorneys' fees), the balance alleged to be due upon a note executed by the defendants.

At the conclusion of all the testimony, motion was made by defendants to strike plaintiffs' evidence, and by plaintiffs to strike defendants' evidence and enter judgment for the sum sued for. There was little, if any, conflict in the testimony. The court treated these motions as a request to discharge the jury and determine all matters of law and fact. The jury was discharged without objection and the court heard argument and decided the case as thus before it. Upon consideration of

the evidence and legal questions presented, judgment was entered in favor of the defendants.

There are several assignments of error taken to the action and judgment of the court. Consolidated, they are to the effect that judgment should have been entered for American Loan Company for the sum sued for; that the evidence does not justify a judgment for defendants, and that the judgment is contrary to the law and evidence.

The following facts and circumstances appear from the record:

On May 20, 1949, Adam Thomas purchased a Ford sedan automobile from Elwood Motor Company. This transaction was financed through the American Loan Company, by Adam Thomas executing to it a note in the sum of $1,540.80 and giving a deed of trust on the car to secure the debt. The note, which was payable in monthly instalments, was also executed by Basil Thomas, a brother of Adam Thomas, as a co-maker.

After certain payments had been made, the Thomas brothers defaulted, and on January 14, 1950, Adam Thomas took the car back to the American Loan Company and informed Max Turk that he could not make the payments. On this occasion he was accompanied by Basil Thomas and Lester Lee Clark, the latter of whom agreed to purchase the car by obligating himself to pay the then balance of $1,138.20, owing on the original debt to the company and to pay $200 to Adam Thomas. This arrangement was agreeable to the company, provided the Thomas brothers would remain personally liable for the debt of $1,138.20 owing it, which they consented to do.

The original deed of trust and note were thereupon cancelled and delivered to Adam Thomas, title to the car was transferred by him to Lester Lee Clark and another note for $1,138.20 and a new deed of trust on the car to secure the note, both dated January 14, 1950, were executed by Lester Lee Clark and delivered to American Loan Company. Though only Lester Lee Clark executed the deed of trust, the new note, payable in seventeen equal monthly instalments of $66.94 was also signed by Adam and Basil Thomas.

The trustees in this deed of trust were M. L. Kammer and C. A. Bare, the latter an assistant manager of American Loan Company.

Under the terms of both the trust deed and note, in case of

default in the monthly payments the entire debt would, at the option of the holder of the note and without notice or demand, become due and payable. The deed of trust further provided that in such event, upon written demand of either trustee, the noteholder or their attorney, the purchaser of the car was to deliver it to the person making such demand. It also contained the following provisions:

"Also said Trustees, upon being requested to do so by the holder of the above described note, shall take possession of and sell any or all of the above granted personal property at public auction or private sale, at the option of said Trustees, for the best cash price obtainable. Reasonable notice of the time, place and manner of sale shall be mailed or sent to the last known address of the Purchasers by either of said Trustees or by the holder of the note, or by their attorney and said notice shall be the only advertisement of the time, place and terms of sale required. * * * Should the proceeds from such sale, when applied as above be insufficient to satisfy said debt, the Purchasers shall continue liable for such deficiency. * * *"

When payment of about $157.94 had been made on the indebtedness, all parties obligated on the note defaulted, and on May 25, 1950, American Loan Company sent for and took possession of the automobile.

After the company took possession of the car, Lester Lee Clark was notified by a mailed written communication, from Katz and Katz, attorneys, that the car would be sold. Similar communications mailed to the Thomas brothers were not delivered and were returned to the sender. No copy of this notice of sale appears in evidence, and there is no testimony as to its contents except it is said that the notice recited what day the sale would be held. But it is not shown that it stated the place, time or manner of sale as required by the trust deed, and no defendant was present when the sale took place. The evidence does establish that the sale was held on July 8, 1950, in Bluefield, Virginia, and one witness said it was a public auction and that he saw a posted notice of sale before it was held. The sale was actually conducted by Jerome Katz (of the firm of Katz and Katz) who Max Turk said was acting as attorney for the trustees. This firm of attorneys at times also represents the American Loan Company. It thus appears that neither trustee took any part in the sale or was even present when it was held.

At this alleged trustee's sale, the automobile was knocked

out to American Loan Company at $300, the highest bid. Jack Alyson, manager of American Loan Company, who made that bid for the company said that in his opinion $300 was a fair price for the car. That, however, was $1,038.20 less than it sold for six months previously, and $838.20 less than the company had then financed it for. Though it needed minor repairs in July, 1950, that is the only circumstance tending to support the mere opinion of this witness, which, in effect, is that the car had deteriorated in value more than $1,000 in six months.

Upon payment of a storage bill incurred after taking possession of the car, attorneys' fees, trustee's commission and other expenses of sale, a net amount of $183.05 was realized and credited upon the note. This action was then filed by American Loan Company against Lester Lee Clark and the Thomas brothers for the deficiency.

It will thus be seen that in May, 1949, American Loan Company financed this car for $1,540.80. On January 14, 1950, it was sold by Adam Thomas to Lester Lee Clark for $1,338.20, and financed in the sum of $1,138.20. At the time it was taken charge of by the company on May 25, 1950, the indebtedness had been reduced to about $980.35 which was the sum owing on the note before credit thereon of the $183.05 derived from the sale. Though the car sold for only $300 at the sale on July 8, 1950, the fact that on January 14, 1950, it was sold for $1,328.20 and refinanced by the American Loan Company for $1,138.20 refutes the mere opinion testimony as to value given by the witness Jack Alyson and furnishes sufficient evidence upon which to conclude that its value on July 8, 1950, was as much as the then debt of $980.35 owing thereon. The court was not required to accept the opinion testimony of witness Alyson as to value when the actual sale price of only a few months prior thereto so definitely disproved his statement.

Though the provisions in the deed concerning notice to the debtor, advertisement and sale of the property in case of default were such as to be of little benefit to him, the evidence fails to establish that even these meager requirements were complied with. The notice of sale sent to Clark, whatever its contents, (and he was the only one to whom the deed required that notice be given) was received by him, but there is no evidence to show that it stated the time or place where the sale would be held, whether public or private, or its terms. We

may not presume that it stated and met these requirements of the deed.

"A sale made by a trustee, without advertising the property as required by the deed, is invalid, and a purchaser is bound to know what the requirements of the deed are in this respect and to see that they have been complied with." *Everette* v. *Woodward,* 162 Va. 419, 424, 174 S. E. 864.

"It is the well-settled doctrine in this jurisdiction that a trustee for sale is the agent of both debtor and creditor, and as such it is incumbent upon him to act toward each with perfect fairness and impartiality; and, moreover, in executing the trust he must in all material particulars substantially conform to the stipulations of the deed." *Preston* v. *Johnson, et al.,* 105 Va. 238, 239, 53 S. E. 1.

"The trustee in selling, acts under a *power* and must conform to the terms of the deed, in respect to the time and manner of giving notice, and the time and manner of sale, as well as in all other particulars; * * *" 1 Minor on Real Property, 2d edition, sec. 640, p. 839.

In addition to lack of proof of compliance with these vital requirements of the deed of trust regarding the notice and advertisement of sale, there was in fact no sale by the trustees, or either of them for neither trustee was present when the sale was made. Though the deed authorized the trustees to employ an attorney to send out the notice of sale, such as it was, it did not empower or undertake to empower the trustees to delegate to another their power and duty to conduct the sale.

"It is a principle, also of such transactions, that the trustee is charged with a *personal confidence,* and must, therefore, act in person, and not by agent." 1 Minor on Real Property, 2d edition, sec. 640, p. 839.

The trustee is the agent of both the debtor and creditor, and though he may employ an auctioneer to cry the sale, it is necessary that he be personally present to direct and supervise the same. That power and duty he may not delegate to another. 1 Minor on Real Property, 2d edition, sec. 640, p. 839; *Smith* v. *Lowther,* 35 W. Va. 300, 13 S. E. 999; *Copelan* v. *Sohn,* 75 W. Va. 83, 82 S. E. 1016; 13 Michie's Jurisprudence, Mortgages and Deeds of Trust, sec. 102, p. 262.

As the plain mandates and requirements of the deed of trust pertaining to notice and advertising the contemplated sale

were ignored and violated, and a party other than either of the trustees conducted the sale (all of which was well known to the American Loan Company), the alleged sale was wholly void. This acquisition of the car by the company as its property violated and breached the terms of the trust deed and the contractual relations of the parties. It amounted to and was in legal contemplation an unwarranted appropriation and conversion of the automobile to its use.

The transaction was similar to an unauthorized and void sale under a chattel mortgage and the acquisition of the mortgaged article by the mortgagee.

There is conflict in the authorities as to the right of the creditor after a conversion of this character to maintain action for any deficiency that may remain unpaid on the indebtedness. 10 Am. Jur., Chattel Mortgages, sec. 243, p. 874; 47 A. L. R. 582-585.

Some decisions are to the effect that upon conversion of the mortgaged article to his use by the mortgagee, his right to maintain an action against the debtor is cancelled.

"* * * A mortgagee who takes possession of the mortgaged goods and sells them to a third party, but who fails to conduct the sale either according to the statute or the terms of the chattel mortgage, converts the goods and forfeits not only his lien but his rights to a deficiency judgment." *Kee* v. *Becker, et al.,* 54 Cal. App. (2d) 466, 129 P. (2d) 159, 162.

"We conclude, after a careful consideration of the record, that there is sufficient evidence to sustain respondents' contention that appellant took the sheep and sold them without following the statutory procedure prescribed for the foreclosure of chattel mortgages and without respondents' consenting to the sale as made. He therefore cannot recover the deficiency, under prior holdings of this court. *Boomer* v. *Isley, supra* [42 Idaho 547, 246 P. 966, 47 A. L. R. 578]; *First Nat. Bank* v. *Poling,* 42 Idaho 636, 248 P. 19; *Garrett* v. *Soucie,* 46 Idaho 289, 267 P. 1078. It follows that there was sufficient evidence to sustain respondents' first affirmative defense." *Boomer* v. *Isley,* 49 Idaho 666, 290 P. 405, 406.

Other authorities hold that it is only when the value of the appropriated property is equal to or greater than the debt owing that the conversion extinguishes all right of action on the previously existing indebtedness. *Shortal* v. *Standerford,* 87 Ind.

App. 167, 157 N. E. 109; *Harrison* v. *Hall, et al.,* 239 N. Y. 51, 145 N. E. 737; *Levy* v. *Reich,* 78 Misc. Rep. 413, 138 N. Y. S. 419; *Marseilles Mfg. Co.* v. *Perry,* 62 Neb. 715, 87 N. W. 544; 2 Cobbey on Chattel Mortgages, sec. 1005, p. 1240; 10 Am. Jur., Chattel Mortgages, sec. 243, p. 874.

However, we need not decide whether or not the mere conversion of the automobile by American Loan Company, irrespective of its then value, extinguished the otherwise existing right of action against the defendants upon the note.

Section 8-491, Code of 1950, provides as follows:

"* * * when a case at law is decided by a court or judge without the intervention of a jury and a party excepts to the decision on the ground that it is contrary to the evidence, and the evidence, not the facts, is certified, the judgment of the trial court shall not be set aside unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it."

Here all matters of fact were submitted to the court for decision and its judgment was for defendants. We are now required to consider the evidence in the light most favorable to them.

The final effect of the assignments of error was to test the sufficiency of the evidence to sustain the judgment.

When the evidence is fairly weighed, it sustains the conclusion that the value of the car on July 8, 1950, was at least $890, the balance of the then indebtedness due thereon. Thus the record definitely fails to disclose that the judgment for defendants "is plainly wrong or without evidence to support it." It does, however, appear that there has been a fair trial on the merits and substantial justice has been reached. That being true, under the provisions of section 8-487, Code of 1950, the judgment should not be disturbed. It is accordingly

*Affirmed.*