# Richmond

CRAWFORD AND COMPANY v. ALBERT R. GRAVES.

December 2, 1957.

Record No. 4708.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Whittle and Snead, JJ.

The opinion states the case.

*Edward A. Marks, Jr.* (*Sands, Marks & Sydnor*, on brief), for the plaintiff in error.

*Martin A. Martin*, for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

■ This appeal involves an action in slander brought by Dr. Graves against Crawford and Company. By agreement the case was submitted to the judge without the intervention of a jury. The trial resulted in a judgment of $300 in favor of plaintiff, to review which we granted defendant a writ of error.

The facts disclosed that Clarence Rogers, employed as a laborer by Wesley of Florida, Inc., drove a nail into his foot when he attempted to "kick loose" a hanging board. The employer carried compensation insurance and referred the matter to its compensation carrier which in turn employed Crawford and Company as its adjuster to handle the claim before the Industrial Commission, with J. H. Furbee, an employee of the adjuster, acting for his principal.

Rogers was sent to a hospital for treatment and was shortly discharged by the attending physician. After discharge the foot continued to give him trouble and he returned to the hospital on two occasions seeking further treatment. He was unsuccessful on these visits in finding the doctor who had treated him, and again consulted the superintendent of his employer regarding his injury. According to Rogers the superintendent told him that the doctor said there was nothing wrong with his foot other than "he needed to go to work".

Rogers testified that in the meantime his foot had become swollen and festered, with bumps on the inside of his ankle, and he could not walk without crutches. Whereupon he advised with Dr. Sutton, his family physician, who made an engagement for him to see Dr. Graves, a licensed chiropodist. Dr. Graves undertook the treatment of his foot and it became, according to Rogers, greatly improved and was ultimately cured. Rogers testified that he was entirely satisfied with Dr. Graves' services.

While Rogers was being treated by Dr. Graves, Adjuster Furbee, in following up the case, consulted with Claims Examiner Robinson of the Industrial Commission who advised him to refer Rogers to an orthopedic surgeon for further examination and report. In the meantime Dr. Graves, at the request of Furbee, submitted a medical report and his bill for services. The report indicated that upon x-ray examination at Dr. Graves' instance there was disclosed a chip fracture of one of the bones in Rogers' foot and some evidence of an osteo-arthritic condition resulting therefrom. The x-ray previously

taken at the hospital had failed to reveal any such complication and the orthopedic report of the attending physician had indicated only a minor injury.

A dispute arose between Furbee and Dr. Graves regarding his bill for services, which, however, was ultimately paid.

Acting upon the advice of Claims Examiner Robinson, Furbee made an effort to refer Rogers to Dr. R. D. Butterworth, an orthopedic surgeon. Rogers testified that Furbee, while suggesting the change in doctors, said: "Dr. Graves is not the type of doctor for this kind of work. He is a doctor for ingrowing toenails, flat feet and falling arches."

Subsequently Rogers informed Dr. Graves that he had been required to change doctors, telling him the substance of Furbee's statement. Rogers also told Dr. Sutton what Furbee had said regarding Dr. Graves, and the evidence discloses that Dr. Sutton repeated these statements to members of the medical profession in Richmond thus establishing damage to Dr. Graves.

Furbee contended that the statement he made to Rogers was related to him by the claims examiner. On cross-examination, however, Claims Examiner Robinson emphatically denied telling Furbee that Dr. Graves was "a doctor for ingrowing toenails, flat feet and falling arches." He stated that he only told Furbee he did not think a chiropodist was qualified to treat Rogers' injury and the case should be referred to an orthopedic surgeon.

Crawford and Company assigns six errors, all of which involve the contention that "Where the occasion is qualifiedly privileged [as here conceded by both parties] the words spoken are not actionable, even though untrue and defamatory, unless the scope of the privilege of the occasion is exceeded or the words are spoken with *actual* malice; and in such cases the burden is upon the plaintiff to prove that the words were spoken with *actual* malice."

As we view the case, the difficulty presented arises from a misconception held by appellant between a qualified privilege on the one hand and an absolute privilege on the other, and a misconception of the difference between actual and implied malice.

Under the rules of the Industrial Commission, defendant's agent had a right to request that Rogers go to a physician selected by the commission. If the claimant failed to comply with the request the payment of compensation could be stopped or discontinued until the request was complied with. In such a situation, reasonable words

of persuasion used by the adjuster in making the requested change in physicians would have been privileged and the occasion on which the words were used would have been qualifiedly privileged.

In this instance, however, the court, having the responsibility of determining the facts, was justified in concluding that the adjuster went beyond the bounds of fair comment when he falsely impugned the professional qualifications of the doctor by stating: "He is a doctor for ingrowing toenails, flat feet and falling arches."

Section 54-273(8), Code of Virginia, 1950, as amended, reads:

" 'Practice of chiropody (podiatry)' means the medical, mechanical and surgical treatment of the ailments of the human foot, but does not include amputation of the foot or toe, nor the use of other than local anesthetics."

The gratuitous statement made by the adjuster furnished the basis for inference of malice, and the court, taking into consideration all the circumstances surrounding the case, had a right to so hold. The protection granted under a qualified privilege may be lost by the manner of its exercise. And it is lost when the communication complained of goes beyond what the occasion demands and is unnecessarily defamatory.

As stated in 53 C. J. S., Libel and Slander, § 97, p. 153, *et seq.*:

"The protection of a qualified privilege may be lost by the manner of its exercise, although belief in the truth of the charge exists. The privilege does not protect any unnecessary defamation. In order for a communication to be privileged, the person making it must be careful to go no further than his interest or his duties require. Where the person exceeds his privilege and the communication complained of goes beyond what the occasion demands that he should publish, and is unnecessarily defamatory of plaintiff, he will not be protected, and the fact that a duty, a common interest, or a confidential relation existed to a limited degree, is not a defense, even though he acted in good faith." See also 33 Am. Jur., Libel and Slander, § 183, p. 176, *et seq.*

It was incumbent upon the court to look to the primary motive or purpose which apparently inspired the defendant to utter the words complained of, and to hold the privilege lost if the utterance was not made for the primary purpose of furthering the interest entitled to protection. If the court gathered from the circumstances surrounding the publication that the defendant attempted to use the circumstances and the occasion for a purpose not war-

ranted under the extended immunity, then in that event the privilege was abused and the immunity lost. See Harper on Torts, § 5.27, p. 452.

The recognized rule in Virginia was stated in *Aylor v. Gibbs,* 143 Va. 644, 648, 129 S. E. 696:

"(W)hen the words complained of are uttered upon an occasion of qualified privilege, then in order to recover it must appear from the evidence that the language used was disproportioned in strength and violence to the occasion, or went beyond the exigency of the occasion, or that the occasion was abused to gratify the ill will of the defendant; in other words, that the defendant was acting from actual malice. Strong and violent language or insinuations disproportionate to the occasion may raise an inference of malice and thus lose the privilege that might otherwise attach to the occasion."

As stated in *Fahr v. Hayes,* 50 N. J. L. 275, 279, 13 A. 261:

"By express malice is meant some motive, actuating the defendant, different from that which prima facie rendered the communication privileged and being a motive contrary to good morals."

In Virginia, when a case is tried before a judge without a jury, his finding as to the credibility of witnesses and the weight to be given their testimony stands on the same footing as the verdict of a jury. *Sutton v. Menges,* 186 Va. 805, 809, 44 S. E. 2d 414, 416; *Turk v. Clark,* 193 Va. 744, 751, 71 S. E. 2d 172, 176, 177; 1 M. J., Appeal and Error, § 276, pp. 705, 706.

For the reasons stated the judgment is

*Affirmed.*

HUDGINS, C. J., dissenting.

I do not think the alleged defamatory language upon which this action is based, uttered on an admittedly qualified privileged occasion, was so strong, violent or disproportionate to the occasion to raise an inference of malice necessary to sustain a recovery. I would reverse the judgment and dismiss the case.