**In re Richard L. SMITH, Cynthia K. Smith, Debtors.**

**UNITED STATES of America, etc., et al., Plaintiffs,**

v.

**Richard L. SMITH, et al., Defendants.**

**Bankruptcy No. 5–83–00384.**

**Adv. No. 5–87–0059.**

United States Bankruptcy Court, W.D. Virginia, Harrisonburg Division.

March 24, 1989.

Jean Weld, Asst. U.S. Atty., Roanoke, Va., for Farmers Home Adm.

Paul M. Penick, Lexington, Va., for Rector A. Engleman, Jr.

Michael Cleary, Roanoke, Va., and Paul D. Scanlon, Manassas, Va., for Richard and Cynthia Smith.

## MEMORANDUM OPINION

ROSS W. KRUMM, Bankruptcy Judge.

The matter before the Court for decision arises as a result of a complaint filed by the Farmers Home Administration and others (collectively referred to as FMHA) against the debtors, Richard L. Smith and his wife (the Smiths), for, among other things, ejectment of the Smiths from certain real property which they own in Rockbridge County and a declaration that the purchasers of the Smith property at a foreclosure sale and FMHA are entitled to possession of the property. The Smiths have raised numerous defenses to the action for ejectment. Since some of the defenses raised by the Smiths challenge the validity of the foreclosure sale and since a valid foreclosure sale would be necessary in order to entitle FMHA to standing to pursue an ejectment action under the Virginia Code, it is necessary that the Court deal with the defenses raised by the Smiths to the validity of the sale.

The following constitutes the Court's findings of fact and rulings of law in this adversary proceeding.

## Facts

In September of 1980, the Smiths purchased a farm in Rockbridge County for the purpose of engaging in dairy farming. At the time of the purchase, there were four deeds of trust on the property securing indebtedness owed to Farmers Home Administration (Farmers Home). After their purchase of the property, the Smiths borrowed additional funds from Farmers Home and secured these borrowings with three additional deeds of trust on the property. Thus, at all times relevant to these proceedings there were seven deeds of trust on the Smith property securing loans from Farmers Home.

On October 11, 1983, the Smiths filed a Chapter 11 proceeding in the Harrisonburg Division of the Bankruptcy Court. The Chapter 11 proceeding is still pending.

On February 15, 1985, this Court entered an order lifting the stay imposed by 11 U.S.C. § 362 in order to permit Farmers Home to foreclose its deeds of trust on the Smiths' property. In August of 1986, Farmers Home sent to the Smiths a notice that it was accelerating the obligations secured by the seven deeds of trust. In October of 1986, Farmers Home requested that the substituted trustee under the deeds of trust, Arthur L. Mitchell, Jr., sell the Smiths' property. It should be noted at this time that Mr. Mitchell was an employee of Farmers Home at the time he was substituted as trustee under the deeds of trust.

In January of 1987, Mr. Mitchell gave authorization to Ira V. Kimble, Farmers Home County Supervisor for Rockbridge County, to conduct a sale of the Smiths' property. At all times relevant to these proceedings, Mr. Kimble was an employee of Farmers Home and acted as agent for Mr. Mitchell, the trustee in the foreclosure process under a paragraph in the deeds of trust which stated as follows:

The Trustee at Trustee's option may conduct such sale without being personally present, through Trustee's delegate authorized by Trustee for such purpose orally or in writing and Trustee's execution of a conveyance of the property or any part thereof to any purchaser at foreclosure sale shall be conclusive evidence that the sale was conducted by Trustee personally or through Trustee's delegate duly authorized in accordance herewith.

See paragraph (19), plaintiff's exhibit 10.

Under the delegation of authority to act for the trustee, Mr. Kimble proceeded to prepare to sell the property. His preparation included, among other things, advertisement of the property not only locally in Rockbridge County but also in the Washington D.C. and Richmond area.

As evidenced by his testimony at trial, Mr. Kimble continued to perform his duties as Farmers Home County Supervisor with respect to the Smith property after his designation as agent for trustee Mitchell. As part of the performance of his duties as County Supervisor, Mr. Kimble was required to evaluate the property for purposes of determining how much Farmers Home should bid at the auction sale to protect its interest. Mr. Kimble was experienced with the Smith property and had evaluated it on two previous occasions. On one occasion, he valued the property at $240,000.00. On another occasion, approximately eight months prior to the foreclosure sale, Mr. Kimble valued the property at $200,000.00. In March of 1987, approximately a month prior to the scheduled foreclosure sale, Mr. Kimble revalued the property at $122,500.00. Mr. Kimble's testimony at trial indicates that the closer he got to the date of the foreclosure sale, the more reservations he had concerning the value of the property. His reservations resulted in consultation with realtors and, ultimately, in a telephone conversation with Mr. Mitchell. During the course of this conversation, Mr. Kimble indicated his belief that the property would not bring more than $100,000.00. Mr. Mitchell's response to Mr. Kimble's observation was that Farmers Home would probably not bid if the bidding by others at the auction

reached $100,000.00 and, in that event, they (Kimble and Mitchell) would readjust the appraisal of $122,500.00 set by Mr. Kimble downward to reflect the bid price. It is clear from the testimony of Mr. Kimble that his conversation with Mr. Mitchell was in the context of two employees of Farmers Home discussing the strategy which Farmers Home would employ concerning bidding at the auction sale.

On April 10, 1987, Mr. Kimble sold the Smiths' property on the Rockbridge County courthouse steps. During the course of the bidding, Mr. Rector Engleman, Jr. bid $105,000.00 for the Smith property. An agent for Farmers Home, Ms. Theimer, was designated by Mr. Kimble to attend the auction sale to bid for Farmers Home if necessary. Ms. Theimer was instructed by Mr. Kimble prior to the sale that Farmers Home would not bid in excess of $100,-000.00. Nevertheless, when Mr. Engleman's bid of $105,000.00 was submitted at the auction, Ms. Theimer inquired of Mr. Kimble whether she should bid on behalf of Farmers Home. Mr. Kimble instructed Ms. Theimer to refrain from bidding. The sale was knocked down to Mr. Engleman at $105,000.00, a memorandum of sale was executed, and Mr. Kimble proceeded to process the paperwork through the Farmers Home Administration in order to obtain a deed to Mr. Engleman. The deed was prepared and signed by Mr. Mitchell in his capacity as trustee. It was then forwarded to Mr. Kimble who notified Mr. Engleman that he could pick up the deed upon delivery of the balance of the purchase price. At this point in time, the Smiths intervened and, through counsel, raised questions concerning the validity of the foreclosure sale and the vesting of title to the property in Mr. Engleman. In view of the objections raised and the inability of Farmers Home to resolve them in a manner satisfactory to counsel for Mr. Engleman, the sale to Mr. Engleman has never closed. Further, Farmers Home has never submitted a final accounting to the commissioner of accounts of Rockbridge County concerning the foreclosure sale. Instead, Farmers Home, the Englemans, and, after two amendments to the complaint in this proceeding, Mr. Mitch-ell, brought this action for ejectment and a declaration of the parties' rights.

Trial of this matter was held in Harrisonburg, Virginia, on December 15, 1988, and the parties have been heard in oral argument and have submitted written briefs. The Smiths have focused on four specific issues concerning the validity of the foreclosure conducted by Farmers Home. They are as follows: (1) whether the notice to the Smiths of acceleration of the debt secured by the deeds of trust was proper in view of the fact that the trustee under the deeds of trust did not send the notice of acceleration; (2) whether notice to Mrs. Smith of the acceleration of the debt was insufficient under Virginia law; (3) whether the trustee's failure to attend the foreclosure sale and his action through an agent at the foreclosure sale renders the foreclosure sale void; (4) whether the trustee, or his agent, acted in an impartial manner in carrying out the foreclosure sale.

The Court will deal with each of these four issues separately and will set forth such additional facts as are relevant to the specific issues discussed.

### Law

The Smiths take the position that the only person who could give notice of acceleration of the Smiths' loan was the trustee under the deed of trust. They rely on Code of Virginia § 55–59(6) which states, in part:

> (6) In the event of default in the payment of the debt secured, or any part thereof, at maturity, or in the payment of interest when due, or of the breach of any of the covenants entered into or imposed upon the grantor, then at the request of any beneficiary the trustee shall forthwith declare all the debts and obligations secured by the deed of trust at once due and payable and may take possession of the property and proceed to sell the same at auction....

Va.Code Ann. § 55–59(6) (1986).

The evidence at trial shows that the notice of acceleration was sent to Mrs. Smith on August 13, 1986, by Ronald R. Brown,

District Director, IV, Farmers Home Administration. Thus, it is clear that an employee of Farmers Home sent the notice of acceleration.

The Smiths argue that the language of Code of Virginia § 55–59(6) is mandatory so that, without notice from the trustee, the foreclosure process is illegal.

The preamble to Code of Virginia § 55–59 states as follows: "Every deed of trust to secure debts or indemnify sureties is in the nature of a contract and shall be construed according to its terms to the extent not in conflict with requirements of law...."

The Court has examined plaintiff's exhibit 10 which is one of the deeds of trust between Farmers Home and the Smiths. Paragraph 18 of that deed of trust provides as follows:

> (18) SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be declared a bankrupt or an insolvent or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable....

Plaintiffs' Exh. 10.

Thus, it is clear the contract between the parties permits the government to declare a default under the deed of trust and note. This contractual provision is not in conflict with section 55–59(6) of the Code of Virginia. The language, quoted above, is clear that a duty is imposed on the trustee under the deed of trust once the beneficiary requests that the trustee take action to declare all of the debts and obligations secured by a deed of trust due and payable.

The Smiths try to argue that the language in section 55–59(6) is analogous to the language in Code of Virginia, § 55–59.2. However, such an analogy does not assist the Smiths in this argument.

Section 55–59.2 begins "notwithstanding the provisions of the deed of trust." In *Deep v. Rose*, 234 Va. 631, 364 S.E.2d 228 (1988), the Supreme Court of Virginia found that the language in section 55–59.2 is an expression of legislative intent,

> [T]hat the eight-day minimum and thirty-day maximum periods between advertisement and sale are intended to be mandatory, overriding for the first time in the history of these statutes both the discretion of the trustee and the contractual terms adopted by the parties to the deed of trust. In this crucial respect, the statute before us differs from all its predecessors.

*Id.* at 635–36, 364 S.E.2d at 231.

▪ The Court holds that the parties to the deed of trust are contractually bound by its provisions. Paragraph 18 of exhibit 10, which is representative of language in all of the deeds of trust at issue in this case, gives the government the option to accelerate the deed of trust. The Court finds that Farmers Home exercised its rights under the deed of trust and the foreclosure sale is not void or voidable as a result of the notice of acceleration having been given by Farmers Home.

▪ The Smiths argue that the notice of acceleration was defective since Farmers Home sent it only to Mrs. Smith. The only evidence before the Court as to the notice of acceleration is plaintiff's exhibit 3. This letter shows that it was addressed to Mrs. Smith only. However, the Court must again turn to the contract between the parties to determine their rights. Examining exhibit 10, paragraph 18 once again, the Court finds that the government had the contractual right to declare the entire amount of the indebtedness immediately due and payable "with or without notice." Thus, at the inception of their contractual relationship with Farmers Home, the Smiths were on notice that the debt could be accelerated upon a default without any notice to them. Since Farmers Home had no obligation to give any notice to the Smiths of the acceleration, the fact that notice went solely to Mrs. Smith is of no

consequence. Further, Mr. Smith offered no evidence to show that he suffered prejudice or damage as a result of the failure of Farmers Home to send him a separate notice. Accordingly, the Court holds that the failure of Farmers Home to send Mr. Smith notice of the acceleration of the debt is not grounds for declaring the foreclosure sale voidable or void.

██ The next issue raised by the Smiths is the trustee's failure to attend the auction sale. As indicated in the facts above, it is clear that Mr. Mitchell did not attend the foreclosure sale. Rather, Mr. Mitchell had designated Mr. Kimble as his agent to sell the property at auction. The Smiths argue that the trustee must be present at the auction sale in order for it to be valid. In support of their position, the Smiths cite *Turk v. Clark*, 193 Va. 744, 71 S.E.2d 172 (1952). The *Turk* case involved a foreclosure of an automobile under a deed of trust. There were certain requirements in the deed of trust concerning notice and advertising of the sale of the automobile upon default in making payments on the purchase price. The Supreme Court of Virginia held that the foreclosure sale was void since the trustees failed to follow the terms of the deed of trust.

The facts show that the *Turk* foreclosure was conducted, not by the trustees, but by an attorney acting for the trustees. Although it is not clear from the facts of the *Turk* case, it appears that there was no provision in the deed of trust for substitution of trustee or delegation of the trustees' authority.

The language in the *Turk* case which the Smiths rely on is as follows:

> The trustee is the agent of both the debtor and creditor, and though he may employ an auctioneer to cry the sale, it is necessary that he be personally present to direct and supervise the same. That power and duty he may not delegate to another.

*Id.* at 749, 71 S.E.2d at 176.

The legal authority used by the Supreme Court of Virginia for the proposition that the trustee must be personally present is, in the final analysis, *Smith v. Lowther*, 35 W.Va. 300, 13 S.E. 999 (1891). In examining the *Lowther* case, it appears that an individual, not a trustee under the deed of trust, conducted an auction sale of real property by the consent of all of the parties to the auction sale. The West Virginia Supreme Court held that the parties to the deed of trust could not orally agree at the auction for an individual to serve as agent for the trustee. Instead, the court found that the West Virginia Code provides for the substitution of trustee when necessary and that the parties were required to follow the Code section. The West Virginia Code section stated as follows:

> '[T]he personal representative of a sole or surviving trustee shall execute the trust or so much as remained unexecuted at the death of such trustee (whether the trust subject be real or personal estate,) *unless the instrument creating the trust otherwise direct*, or some other trustee be appointed for the purpose by a court of chancery having jurisdiction of the case.' *Id.* at 310–11, 13 S.E. at 1002 (emphasis added).

The West Virginia Supreme Court recognized in *Lowther* that the statute for substitution of trustee permitted the parties to the contract to provide for substitution of trustee or delegation of authority. It just so happens that in *Lowther* the deed of trust did not "otherwise direct." In analyzing the *Turk* case for the proposition that a trustee must attend the auction sale, this Court finds language in the *Turk* opinion which indicates that the Supreme Court of Virginia understood that the parties could contract for the substitution of the trustee or the delegation of authority. For example, the *Turk* opinion cites *Preston v. Johnson*, 105 Va. 238, 239, 53 S.E. 1 (1906), for the proposition that the trustee must act toward the debtor and the creditor with perfect fairness and impartiality. The quote in *Turk* from the *Preston* case also states: "[A]nd, moreover, in executing the trust he must in all material particulars substantially conform to the stipulations of the deed." *Turk*, 193 Va. at 749, 71 S.E.2d at 175 (1952).

The *Turk* court also recognized that the deed of trust between the parties did not provide for the delegation of any authority to sell the property for the trustee. "Though the deed authorized the trustees to employ an attorney to send out the notice of sale, such as it was, it did not empower or undertake to empower the trustees to delegate to another their power and duty to conduct the sale." *Id.* at 749, 71 S.E.2d at 175–76. Thus, by implication, the *Turk* court recognized the right of the parties to contract for delegation of the trustees authority.

In the case at bar, the deed of trust between the Smiths and Farmers Home contains the following language:

> Trustee at his option may conduct such sale without being personally present, through his delegate authorized by him for such purpose orally or in writing, and Trustee's execution of a conveyance of the property or any part thereof to any purchaser at foreclosure sale shall be conclusive evidence that the sale was conducted by Trustee personally or through his delegate duly authorized in accordance herewith.

Plaintiffs' Exh. 7.

The *Turk* court and the *Lowther* court were not required to deal with or decide the issue in the case at bar. The Smiths argue that the *Turk* holding should be extended to a fact situation where the deed of trust provides for the delegation of authority. This Court declines to extend the *Turk* holding to the case at bar. When the Smiths entered into their contractual arrangements with Farmers Home, they bargained away any common law right which they might have to require the trustee's personal attendance at the auction sale. The language of the deed of trust is clear. The parties knew and understood that the trustee had the right to delegate the conduct of the sale to an agent and to absent himself from the sale. The Smiths have cited this Court to no case which stands for the proposition that parties cannot contract away rights which they might otherwise be entitled to receive under common law.

The Smiths also argue that the *Turk* case is grounded in a fundamental proposition that a confidence is reposed in a designated trustee by both parties at the creation of the trust and that the parties should have the benefit of their selection. However, this fundamental proposition of trust law was bargained away by the parties when they entered into the written deed of trust. Finally, it should be noted that Code of Virginia, § 26–49, permits the parties to contract for the substitution of a trustee:

> In any deed of trust, or trust agreement, the maker or makers or grantor or grantors may grant the beneficiary or beneficiaries, or a majority in amount of the holders of the obligations secured thereunder, the right and power to appoint a substitute trustee or trustees, in event of the resignation, death, incapacity, disability, removal or absence from the State of the trustee or trustees; provided, however, that if the trust agreement so provides, substitution may be made at the discretion of the beneficiary or beneficiaries for any reason whatsoever.

Va.Code Ann. § 26–49 (1986).

Thus, the legislature in Virginia has recognized that the parties, at the time of contracting, may agree to give the beneficiary of a deed of trust the power of substitution.

This Court finds no reason to hold that the parties could not also contract to permit the trustee to conduct the sale without being personally present. In short, the Court holds that the parties here are contractually bound by their written agreement and that the foreclosure sale is not voidable or void as a result of the failure of the trustee, Mr. Mitchell, to personally attend the auction sale.

■ The fourth issue raised by the Smiths involves the conduct of Mr. Kimble as agent for the trustee during the foreclosure process. Mr. Kimble, as the Rockbridge County supervisor for Farmers Home, was directly involved with the Smiths from the time they purchased the property until it was foreclosed. He is the individual responsible for servicing the loan

in Rockbridge County. He is also the individual who was designated by Mr. Mitchell, the trustee, to serve as his agent for purposes of the foreclosure. The Smiths argue that Mr. Kimble could not function in his capacity as an employee of Farmers Home and as an agent for the trustee in a manner consistent with the requirements of the law that the trustee be fair and impartial to both the debtor and the creditor. The duty of the trustee to be fair and impartial has been set forth in *Smith v. Credico Indust. Loan Co.*, 234 Va. 514, 362 S.E.2d 735 (1987). In the *Smith* case, the court discussed the conduct of trustees with regard to the sale of trust property and set forth, among others, the following pertinent principles: (1) a trustee under a deed of trust is a fiduciary for both debtor and creditor and must act impartially between them; (2) a trustee must not place himself in a position where his personal interest conflicts with the interests of those for whom he acts as a fiduciary. *Id.* at 516, 362 S.E.2d at 736–37.

■ This Court holds that an agent of the trustee under a deed of trust to whom the conduct of a sale has been delegated must exercise the same degree of fiduciary responsibility to the debtor and creditor as that which is imposed on the trustee himself. In the case at bar, Mr. Kimble was appointed agent for the trustee in January of 1987. At that point in time, Mr. Kimble had imposed upon him a fiduciary responsibility to treat the debtor and creditor with perfect fairness and impartiality. *Turk*, 193 Va. at 749, 71 S.E.2d at 175 (1952). However, Mr. Kimble was unable to fulfill that fiduciary responsibility as long as he remained an employee of the Farmers Home Administration and involved himself, in that capacity, in the disposition of the Smiths' loans and property. Necessarily, any act which Mr. Kimble took concerning the Smith property in his capacity as an employee could not be fair and impartial to the Smiths. For example, Mr. Kimble appraised the Smith property on at least three occasions. Prior to his designation as agent for the trustee, Mr. Kimble appraised the Smith property for $240,000.00 and for $200,000.00, this last appraisal coming approximately eight months prior to foreclosure. After Mr. Kimble was designated as agent for the trustee, he conducted another appraisal, less than one month prior to the foreclosure, where he valued the property at $122,500.00. This valuation was done specifically to set the amount which Farmers Home would be willing to bid at the foreclosure sale. Mr. Kimble, as agent for the trustee, had the responsibility to make every effort to obtain the highest price for the property for the benefit of both the Smiths and Farmers Home. On the other hand, as an employee of Farmers Home, he had the responsibility to value the property in such a way that Farmers Home could be assured that it would bid an amount not more than what he, as County Supervisor, determined was the fair market value of the property. It is clear that Mr. Kimble's loyalties in conducting the appraisal went to his employer. After Mr. Kimble appraised the property for $122,500.00 and as the date for foreclosure drew near, he had further thoughts on the value of the property. He telephoned Mr. Mitchell to discuss these concerns that the property would bring not more than $100,000.00. Mr. Mitchell, the trustee, was clearly participating in this conversation in his capacity as an employee of Farmers Home. His response was that Farmers Home would bid no more than $100,000.00 and adjust Mr. Kimble's appraisal downward if necessary. As an employee of Farmers Home, Mr. Mitchell's response was understandable. However, he could not be fair and impartial as a trustee and make the decision which he made concerning the value of the property for bid purposes.

Mr. Kimble, as an employee of Farmers Home, was required to set the bid price at foreclosure and to designate a Farmers Home employee to bid at the foreclosure sale. Ms. Theimer was the designated Farmers Home employee. Prior to the sale, Mr. Kimble instructed Ms. Theimer that Farmers Home would not bid more than $100,000.00. This instruction was clearly inconsistent with his position as agent for the trustee. At the foreclosure,

Mr. Kimble was put in an even more awkward position. Mr. Engleman had bid $105,000.00 for the property. Ms. Theimer then asked Mr. Kimble whether she should submit a Farmers Home bid and he instructed her to refrain from bidding. This instruction is inconsistent with his duty as agent for the trustee to obtain the highest price available for the property. *Smith,* 234 Va. at 517–18, 362 S.E.2d at 737 (1987).

Based upon the foregoing, this Court holds, consistent with the principles set forth by the Supreme Court of Virginia in the *Smith* case, that Mr. Kimble as agent for the trustee and Mr. Mitchell as trustee did not act impartially between the debtor and the creditor in the foreclosure of the Smiths' property. This Court holds that the foreclosure sale is voidable and must now be set aside.

Having set aside the foreclosure sale, none of the plaintiffs have any standing to bring an ejectment action under the Code of Virginia. Accordingly, the plaintiff's case will be dismissed. An appropriate order will be entered to implement this memorandum opinion.